151 So.2d 433 (1963)
A.H. SAKOLSKY, Petitioner,
v.
The CITY OF CORAL GABLES, Florida, a municipal corporation, Respondent.
No. 31842.
Supreme Court of Florida.
February 20, 1963.
Rehearing Denied March 19, 1963.
A.H. Sakolsky, in pro. per.
Edward L. Semple, Coral Gables, and William M. Burton, Jr., Fort Lauderdale, for respondent.
DREW, Justice.
Writ of certiorari has issued in this cause on the ground that the decision of the district court,[1] denying injunctive relief against rescission of a building permit, is in direct conflict[2] with decisions of this Court that municipal action in such situations is governed by the doctrine of equitable estoppel.[3]
*434 The facts of the case are basically undisputed. In August, 1960, the petitioner Sakolsky testified he became interested in erecting a 12-story luxury apartment building in Coral Gables. He went to see the mayor of the City to discuss with him the best location for such a project. The mayor suggested that a portion of Biltmore Way in the City of Coral Gables, west of the business district, was the most logical place and arranged a conference with a landowner in the area. The suggested site fronted on a one hundred foot boulevard in an area zoned for apartments where other multistory buildings already existed. After negotiations with the landowner, Sakolsky entered into options to purchase the land, on the basis that if he could erect a 12-story apartment building thereon, he would purchase the land.[4]
At the suggestion of the mayor, Sakolsky had preliminary plans prepared for the apartment house, which were submitted to the City of Coral Gables Planning and Zoning Department and Board of Architects for approval, and tentative approval was granted.
Under the zoning code of the City of Coral Gables, the permission of the City Commission was required[5] for the erection of an apartment house in excess of three stories. There was no requirement under the zoning code that public notice be given on application for permission to erect such a structure. A preliminary conference with all of the Commissioners was held in November, 1960, at one of the Commission meetings, at which time it was suggested that a courtesy notice be given to the apartment house owners in the area and that the matter be put on the agenda of the City's Commission meeting on December 6, 1960.
Upon notice and public hearing on that date, Mr. Sakolsky and some 100 objectors, represented by counsel, were fully heard and the Commission by a majority vote enacted an ordinance granting the permission requested. On December 22 the Commission approved traffic flow and fire hazard conditions and the public works department issued a foundation permit authorizing commencement of construction.[6]
It is uncontroverted that petitioner changed his position materially and incurred very *435 substantial expense in reliance upon the permission granted and permit issued by the respondent City. At a meeting on January 10 the City Commission, upon motion by a member whose opposing vote had at the December meeting been overridden, passed an ordinance rescinding petitioner's permit. This proceeding for injunctive relief ensued, based upon the theory of equitable estoppel. The record fails to reflect the course or ultimate disposition of an independent action instituted on December 21, 1961, against the respondent City by an association of apartment owners, but it is clear that petitioner was not joined by service until after enactment of the rescinding ordinance contested in this proceeding.
The import of the final decree entered against petitioner, and the decision affirming same, is that estoppel does not prevent rescission by the respondent City because at the time petitioner obtained his permit and thereafter he "had good reason to believe" the official mind might change because "strenuous objection was present and made known, suit was threatened and the political issue made apparent." Although petitioner denied personal knowledge, the court referred to widespread public notice that City Commission membership was to be altered by an election for a post coming vacant early in January, the campaign being conducted at this time on the issue of high rise zoning controversy.
Aside from petitioner's contention that the record evidence refutes such notice or knowledge on his part, we believe the decision collides with earlier cases on the basic point of law in question. The law is clearly established that the doctrine of equitable estoppel may prevent arbitrary rescission of a permit by a municipality in such a situation "as it would be invoked were [the municipality] an individual."[7] To deny application of the doctrine to the facts of this case on the ground of circumstantial notice that the "official mind" might change amounts, in our opinion, to a rejection of the quoted ruling and creates an irreconcilable conflict of principle. The basic concepts of equitable estoppel, held by the prior cited case to be applicable to municipalities as to individuals, preclude the notion of such instability in municipal action merely because its business is conducted through a body whose membership is subject to change.
The opinion in the case of Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33, which respondent regards as controlling in its favor, does state that one acts at his peril in relying upon a building permit when he is warned by the "red flags" of a political contest in which the success of certain candidates may alter the voting pattern of the governing municipal body. While that case might be distinguished from the one at bar and its conclusion justified on the basis of a number of factual differences,[8] we believe that the rule there pronounced, that an impending change of municipal officers can prevent reliance on an act of the current governing body, is in error and inconsistent with precedent condemning arbitrary action by these public bodies.[9]
Such a permit as that here involved, intentionally and lawfully issued by the *436 proper municipal officers, can have no other purpose than to authorize action by the permittee in reliance on its terms. Notice or knowledge of mere equivocation independent of actual infirmities or pending official action,[10] cannot in this situation operate to negative or prevent reliance on the official act.
The effect of pending litigation directly attacking the validity of a permit or zoning ordinance, or the effect of an eventual determination that such permit was invalid, may present a very different problem.[11] The decision in the instant case was not rested on any showing that petitioner, at the time he acted in reliance on the permit granted him, was a party defendant in legal action directly attacking its validity, that he had any notice that his permit might have been invalid in its inception, or that its revocation was in fact required in the public interest. We conclude consequently that he acted in good faith and should not be denied the benefit of the estoppel doctrine upon which his complaint is founded.
The decision of the district court is quashed and the cause is remanded to that court with directions to enter an order directing the trial court to enter a final decree consistent with this opinion.
ROBERTS, C.J., and THORNAL, O'CONNELL and CALDWELL, JJ., concur.
NOTES
[1] Fla.App., 139 So.2d 504.
[2] Art. V, Sec. 4, Fla. Const., F.S.A.
[3] Texas Co. v. Town of Miami Springs, Fla. 1950, 44 So.2d 808; Bregar v. Britton, Fla. 1954, 75 So.2d 753; Gross v. City of Miami, Fla. 1953, 62 So.2d 418; Sharrow v. Dania, Fla. 1955, 83 So.2d 274; City of Fort Lauderdale v. Lauderdale Industrial Sites, Inc., Fla.App. 1957, 97 So.2d 47; City of Miami v. State ex rel. Ergene, Inc., Fla.App. 1961, 132 So.2d 474; City of Jacksonville v. Waldrep, Fla. 1953, 63 So.2d 768; Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403. See also Frink v. Orleans Corp., 159 Fla. 646, 32 So.2d 425.
[4] Petitioner testified:

"That is exactly the way the conversation went. I said, `It's a lot of money for the land, but I wouldn't dispute with you five, six or seven or eight thousand in one direction or another.' I said, `If I can possibly build an apartment building with the proper number of units, I'm willing to pay the price for the land. The only thing I'm asking of you is an option for that property running until the date that I receive a consideration from the Coral Gables City Commission, a favorable action in that respect.' * * *
"The going price for land in the area was approximately $200 to $250 a front running foot, and I had agreed to purchase the land for almost $400 a front running foot. But I felt that if I could necessarily build the type of development that I was interested in, that the number of units as opposed to the amount of land would be absorptive enough so it would be a feasible deal."
[5] Petitioner has not at any point in the litigation contested, on constitutional or other grounds, the validity of the provision requiring approval by the Commission of any structure exceeding three stories in height.
[6] Some emphasis in argument is placed on the fact that the foundation permit did not contain a height description of the projected building. It was, however, issued after high rise zoning clearance had been obtained and must be construed as authorizing the first stages of construction of the structure as planned. For distinctions between the vesting of rights under permits and under zoning ordinances generally, see McQuillin, Munic. Corporations, 3rd ed. rev., Vol. 8, Sec. 25.133, 25.156-158.
[7] Texas Co. v. Town of Miami Springs, note 3 supra, 44 So.2d p. 809.
[8] The permit in that case was issued on authority of an ordinance granting a use variance which was enacted without benefit of an adversary hearing and argument. Public dispute over such action might in that situation provide am ore reasonable basis for inferring notice of impropriety or unreliability of the variance ordinance and permit. But to attribute to that decision, as did the court below, a controlling effect in the instant case gives rise to additional decisional conflict supporting certiorari jurisdiction in this Court. Pinkerton-Hays Lmbr. Co. v. Pope, Fla. 1961, 127 So.2d 441; McBurnette v. Playground Equip. Co., Fla. 1962, 137 So.2d 563.
[9] Text treatments of this decision in relation to the general body of law indicate some difficulty in reconciling the reasoning underlying the ruling in that case.

"It is generally held that a building or zoning permit may be changed or entirely revoked if it becomes necessary so to change or revoke it in the exercise of the police power, * * *.
"Once the permittee's rights have vested, however, the adoption of an ordinance under which the permit would not be authorized should not be given a retroactive effect * * *. Similarly, when the proper authorities grant a permit for the erection or alteration of a structure, after the permittee has acted on the faith of the permit and made contracts and incurred expenses or obligations thereon, he acquires a kind of property right on which he is entitled to protection; and the permit cannot be revoked in the absence of fraud or deceit or other fault on the part of applicant or in the absence of any public necessity for such action, although it has been held that the permit may be revoked where the elements of equitable estoppel are not present. [citing the Miami Shores decision]"
62 C.J.S. Municipal Corporations § 227 (7).
[10] Sharrow v. City of Dania, note 3 supra.
[11] City of Miami v. State ex rel. Ergene, Inc., footnote 3 supra.