309 So.2d 571 (1975)
TOWN OF LARGO, Florida, a Municipal Corporation, et al., Appellants,
v.
IMPERIAL HOMES CORPORATION, Appellee.
No. 73-733.
District Court of Appeal of Florida, Second District.
March 14, 1975.
Tom R. Moore, Clearwater, for appellants.
Charlie Luckie, Jr., Macfarlane, Ferguson, Allison & Kelly, Tampa, and R. Marlin Smith and Clifford L. Weaver, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for appellee.
GRIMES, Judge.
This is an appeal from a final judgment enjoining the Town of Largo (Town) from enforcing restrictive zoning requirements to prevent Imperial Homes Corporation (Imperial) from building high-rise apartments on certain property within the city limits. Since the lower court ruled against the Town, the facts shall be set forth in the light most favorable to Imperial.
On October 30, 1968, Imperial entered into a contract to purchase the twenty-five (25) acre "Trotter Tract" for $200,000. *572 The tract was zoned "UZ" (unzoned) which permitted development without restriction. Nevertheless, Imperial made the contract of sale contingent upon its obtaining zoning which would expressly allow a multiple family development.
Imperial requested the Town to rezone the tract to permit multiple family dwellings, including high-rise apartments, without limitation as to density or height. On December 17, 1968, based on the favorable recommendation of the Zoning Commission, the Largo Town Commission voted unanimously to approve the rezoning. Imperial then purchased the property.
In 1969, the adjoining sixteen (16) acre "Campbell Tract" was offered for sale. The Campbell Tract was zoned "UZ." Imperial contacted the appropriate officials of the Town and was told that multiple family development was permissible on the Campbell Tract. Imperial then purchased the Campbell Tract at a cost of $110,000.
In September of 1971, the Town retained a professional planner to prepare recommendations for overcoming deficiencies in the Largo zoning ordinance and to recommend rezoning where appropriate. Notice that public hearings would be held on the rezoning recommended by the planner was published on November 22, 1971.
In the meantime, Imperial submitted its detailed master plan to the Town engineer on November 15, 1971. The master plan came before the full Town Commission for approval on November 23, 1971. The plan was referred back to the Town engineer for review. According to the Town Manager, there was no suggestion in any of the discussion that the master plan did not comply with the ordinances and regulations of the Town as they then existed.
When several residents raised an objection to the proposed project at a commission meeting held on January 5, 1972, one of the Zoning Board members observed that he did not feel the Town could morally deny something which had already been given. On January 15, 1972, the Town Commission and the Zoning Board held a joint meeting to consider the planner's recommendations. The recommendation for Imperial's property was that it be zoned "RM-39" (39 units per acre), the highest density. When Imperial agreed to limit its construction to only twenty-four units per acre and to use the Campbell Tract only for recreational purposes, the majority voted in favor of RM-39 zoning.
A public hearing on the proposed zoning ordinance was held on March 21, 1972. At this time, a motion was made to change the proposed zoning for Imperial's property from RM-39 to RM-21.8 (21.8 units per acre). The hearing was continued until April 12, 1972, so that Imperial could be given notice of the suggested change. At the April 12th meeting, a motion was made to zone the property "R-2.5", the most restrictive single family zone. The hearing was again continued so that Imperial could be given the proper notice. On May 3, 1972, the Town Commission voted to zone the property R-2.5 (2.5 units per acre).
The trial court found that as a result of the representations made to Imperial that the land could be used for multiple-family high-rise apartment houses, the Town was estopped from denying such use to Imperial. The court enjoined the Town from enforcing single family zoning classifications on the land and ordered it to rezone the property to a classification allowing construction of high-rise multiple-family dwellings reasonably consistent with the last master plan submitted.
The doctrine of equitable estoppel is applicable to a local government exercising its zoning power when a property owner
(1) relying in good faith
(2) upon some act or omission of the government
(3) has made such a substantial change in position or incurred such extensive obligations and expenses
*573 that it would be highly inequitable and unjust to destroy the rights he has acquired. City of Hollywood v. Hollywood Beach Hotel Company, Fla.App. 4th, 1973, 283 So.2d 867. See Texas Co. v. Town of Miami Springs, Fla. 1950, 44 So.2d 808; City of Naples v. Crans, Fla.App.2d 1974, 292 So.2d 58; City of Gainesville v. Bishop, Fla. App. 1st, 1965, 174 So.2d 100.
The Town asserts that before the doctrine of estoppel can be invoked to preclude a municipality from making a zoning change, the land owners must have either obtained a building permit or made physical changes in the land in reliance on the existing zoning. While it is likely that one or both circumstances will have occurred in most cases where the doctrine is applied, their existence cannot be deemed, as it were, a condition precedent. The trial judge put it well in the final judgment when he said:
"Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon. A citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds... ."
The mere purchase of land does not create a right to rely on existing zoning. City of Miami Beach v. 8701 Collins Ave., Fla. 1954, 77 So.2d 428. But, there is more here. At Imperial's request, the Town zoned the Trotter Tract to a multiple-family classification. At that time the Town knew that Imperial planned a multiple-family high-rise development and that the purchase of the land by Imperial was contingent upon obtaining multiple-family zoning. With knowledge that Imperial would rely thereon, the Town approved the requested rezoning. Thereafter, Imperial bought the land and commenced the elaborate preparations necessary to the construction of a large development. Its master plan might well have been submitted earlier had the Town not changed certain setback requirements in 1971 which necessitated the redrawing of plans. Not until April 12, 1972, did Imperial have any notice that the Town officials contemplated a change in the zoning to single family. By that time Imperial had spent, or was obligated to spend, $310,000 for the land and over $69,000 in architectural fees, interest, taxes, sewer permits, and other direct development costs.
In point of fact, the Town concedes that there was some good faith reliance by Imperial, but claims that the reliance was not "substantial" enough to support estoppel. Specifically, the Town requests us to consider only those expenses made by Imperial prior to November 22, 1971, the date of the notice that public hearings would be held on the planner's recommendations. The Town asks us to determine that payments made after that date were not made in good faith in that there was "zoning in progress." Had the mission of the planner been to recommend zoning classifications of lower density for all vacant property in Largo, the Town might have a point. However, the job of this planner was primarily to update and revise the zoning ordinance to avoid duplication and confusion. As it turned out, the planner's recommendations were in harmony with Imperial's master plan, and the Town has not refuted Imperial's claim that its land was the only parcel upon which the permissible density was reduced.
Any contention that Imperial should have been alerted to the risk of expending further monies when members of the community appeared at the November 23, 1971 meeting to object to the proposed high-rise construction is set at rest by the case of Sakolsky v. City of Coral Gables, Fla. 1963, 151 So.2d 433. There, the Supreme Court *574 rejected the contention that the builder "had good reason to believe" that the official mind might change because numerous persons had raised objections at the meeting in which the requests were granted and because the city commission membership was subject to change in an upcoming election. The court held the builder had a right to rely on the actions of the current governing body regardless of the existence of public protest. In the instant case, even though the number of protesters increased at every subsequent meeting, at all times until April 12, 1972, the "official mind" of the Town Commission continued to reflect the view of permitting Imperial to go forward with its construction. In essence, the Town has asked us to rectify what it now considers to have been a "mistake" made by its 1968 commission and perpetuated thereafter. This, we cannot do. The record amply supports the findings of the trial court resulting in estoppel against the Town.
As a second ground for the judgment, the court below concluded that single family zoning for the subject property was "unreasonable." The parties interpret this conclusion to mean that the zoning was not "fairly debatable." On this point we agree with the Town that the zoning was "fairly debatable." See City of Miami Beach v. Lachman, Fla. 1953, 71 So.2d 148. There was competent opinion given on both sides of the question. While the record reflects that the decision to go to single family zoning was more the result of public clamor than conscientious deliberation by the Town Commission, Imperial's property is totally surrounded by single family zoning districts, and no showing was made that the property is unsuitable for single family development. However, in view of our decision regarding estoppel, the fact that the zoning could be upheld as fairly debatable is of no avail to the Town.
Lest our decision be misconstrued, we recognize an increasing awareness on the part of local governments of the growth problems which vitally affect many of the communities in Florida. Therefore, nothing in this opinion should be construed as any impediment to the efforts of municipalities and other local governmental entities which exercise zoning authority from reducing the density provisions in their zoning regulations in an orderly and comprehensive manner, provided this is accomplished in the interest of the public health, safety and welfare and in a way as not to mislead innocent parties who in good faith rely to their detriment upon the acts of their governing bodies.
Affirmed.
BOARDMAN, Acting C.J., and SCHEB, J., concur.