411 So.2d 1008 (1982)
THE FLORIDA COMPANIES, a Florida Corporation, Appellant,
v.
ORANGE COUNTY, FLORIDA, Appellee.
No. 81-450.
District Court of Appeal of Florida, Fifth District.
March 31, 1982.
*1009 Darryl M. Bloodworth and Lynn James Hinson of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellant.
Karen A. Edwards, Asst. County Atty., Orange County Legal Dept., Orlando, for appellee.
COWART, Judge.
Appellant, The Florida Companies, appeals from an order of the circuit court denying certiorari to review Orange County's refusal to approve appellant's subdivision plat. Appellant contends that the county's refusal to approve the plan constitutes an unconstitutional taking of property, is barred by equitable estoppel and is an improper arbitrary and capricious exercise of the county's police power.
This action involved the county's disapproval of the plat for a subdivision known as "Greenhill Village." The plat was first submitted to the county in 1973 and the developers obtained preliminary approval at that time. The subdivision contained 327 lots and sewage treatment was accomplished by an on-site plant. A substantial amount of work was done on the subdivision, including seventy percent completion of the sewage treatment plant and installation of lines servicing approximately one-half the lots. However, before final approval and sale of the lots took place, the project was halted because of a slump in the land sales market. On May 6, 1976, Guardian Mortgage Investors, the mortgage lender on the subdivision project, foreclosed its mortgage and became fee simple owner of the land.
At the time of preliminary approval, section 6.2.7 of the Orange County Code provided that the final subdivision plans were to be submitted within one year of the preliminary approval. The section further provided that "the Board may void the preliminary plans if substantial work has not been accomplished within one (1) year after approval of such preliminary plans." On November 30, 1976, Hastings, the county "public works director," sent a letter to Guardian citing this section and stating that, in accordance with this section, "the Engineering approval for the subject project is hereby cancelled. It will be necessary for the plans to be resubmitted to this office for approval prior to commencing any construction on this project." On April 30, 1980, Guardian resubmitted the plat for preliminary approval, with minor changes. At the time of both submissions, approximately one-half the property was zoned R-1A and one-half was zoned R-1AA, permitting single family dwellings on 7500 square foot and 10,000 square foot lots, respectively.
Between the first and second submissions, Orange County had passed its "growth management policy." Section 3.1.1 of this policy provides that "Public or approved private central water and sewer systems should not be permitted in the Rural Service Area [including the property in question] until other appropriate urban services are available, or until the Board of County Commissioners determines that a public *1010 health hazard exists requiring a central water or sewer system." Based on this policy, the county commission denied approval of the subdivision plat, stating that sewage in the subdivision would have to be handled by septic tanks, which meant that the lots would have to be a minimum of one acre and that some of the lots would require elevation because of the high water table.
Guardian sought review of the county's decision by petition for certiorari, alleging that the county was equitably estopped from denying Guardian use of the sewage treatment plant, since the plant had been erected in reliance on the county's earlier approval and that the county's decision was arbitrary, unreasonable and capricious.[1] Appellant Florida Companies was substituted for Guardian. The circuit court denied certiorari, and Florida Companies appealed.
Appellant's contention that the county's refusal to approve a subdivision on its property only if septic tanks, rather than the existing treatment plant, are used constitutes a "taking" of its property by use of the police power without compensation and without due process of law was not raised in the appellant's petition for writ of certiorari in the circuit court. Consequently, this court cannot consider that issue.
Appellant's petition for writ of certiorari did allege that approximately $251,000 was disbursed by it to the developer, in reliance upon the preliminary subdivision plat approval, to finance construction of the sewage treatment plant and service lines. Appellant now contends that the county's 180 degree policy reversal would result in the complete loss of this investment and thus, since the investment was made in reliance upon the county's approval, the county should be estopped from denying appellant the right to use the treatment plant.
The doctrine of equitable estoppel may be invoked against a governmental body as if it were an individual. Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla. 1976). This doctrine will preclude a municipality from exercising its police power to prohibit a particular use of land where:
[A] property owner (1) in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired.
Hollywood Beach, 329 So.2d at 15-16. Accord, Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla. 1963); Jones v. First Virginia Mortgage and Real Estate Investment Trust, 399 So.2d 1068 (Fla.2d DCA 1981); Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla.2d DCA 1975). The facts of this case well demonstrate the elements of the doctrine as stated by the supreme court. The county preliminarily approved the subdivision plan, including the use of a package sewage treatment plant. In reliance on this approval, substantial expenditures were made in good faith to construct the plant and service lines.
The county argues that, since only preliminary approval of the subdivision plat was obtained, the developer was not justified *1011 in making expenditures until final approval had been obtained. Furthermore, it contends that preliminary approval was revoked under section 6.2.7 of the Orange County Code, providing that preliminary approval may be voided if substantial work has not been accomplished under the approval within one year. First, this alleged revocation cannot in itself affect the application of the doctrine of estoppel, because it occurred after the subject expenditures had been made. Second, the letter which allegedly revoked the preliminary subdivision approval was insufficient to do so because section 6.2.7 provides that preliminary approval can be voided by the board, while the letter was executed by the "public works director"; also, the letter only purports to cancel the "engineering approval" for the project.
The fact that the expenditures were made upon preliminary approval, rather than final approval, would likewise not affect the application of estoppel. In Sakolsky, the supreme court approved the application of estoppel where expenditures had been made upon tentative approval of preliminary plans. Furthermore, in Town of Largo v. Imperial Homes, estoppel was applied even though no building permit had been issued and no physical changes had been made on the property. Application of equitable estoppel does not depend on absolute, binding, final approval from the governmental body:
Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon. A citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds... .

Imperial Homes, 309 So.2d at 573.
Several courts have held, in connection with the doctrine of equitable estoppel, that a landowner is entitled to proceed in good faith on a preliminary approval by a governmental body and is not required to take into account the fact that the "official mind" might change pending the issuance of final approval. Sakolsky v. City of Coral Gables, 151 So.2d at 435; Jones v. First Virginia Mortgage and Real Estate Investment Trust, 399 So.2d at 1074; Andover Development Corp. v. City of New Smyrna Beach, 328 So.2d 231 (Fla. 1st DCA 1976).
The county argues that "nothing can call forth the court of equity into activity but conscience, good faith and reasonable diligence," citing Horowitz v. United National Corp., 324 So.2d 189 (Fla. 3d DCA 1975). The county contends that the developers did not act in good faith because no final plan was ever submitted. The expenditures upon which estoppel is predicated were made prior to the time that final approval was to be sought, and final approval was not sooner sought because of the financial status of the developers.
The county also challenges the appellant's standing to raise the question of estoppel. Appellant was not the developer of the property; the expenditures were made by the original developer, and appellant was the lender for the project. Appellant ultimately obtained the project through foreclosure of its mortgage. The fact that one is a lienor or a successor in title under foreclosure has been held to make no difference as to that person's ability to invoke the doctrine of equitable estoppel against a governmental body, so long as that person has justifiably and in good faith suffered detriment in relying upon the governmental body's official actions. Jones v. First Virginia Mortgage and Real Estate Investment Trust; Jones v. U.S. Steel Credit Corp., 382 So.2d 48 (Fla.2d DCA 1979). The county argues that in Jones v. First Virginia, the court held that the construction mortgage lender did not have standing. However, the record in that case showed that the lender did not disburse funds in reliance upon the zoning; the lender *1012 was not required to disburse any funds until final approval and building permits had been obtained. The lender, however, disbursed funds before such was obtained, thereby evidencing to the court his non-reliance upon the zoning status of the property. The instant case is more analogous to Jones v. U.S. Steel, in which the court allowed the lender to raise equitable estoppel. The record in that case showed that the lender had made disbursements relying on the county's zoning of the property. In the instant case, the appellant's disbursements of funds were likewise made in reliance upon the city's preliminary approval of the subdivision as including a package treatment plant.
The appellant's petition for certiorari demonstrated that the county should be estopped from denying appellants the right to develop their property in accordance with the plat preliminarily approved, since substantial expenditures had been made in reliance on the county's approval of the plat. The circuit court should have granted the writ of certiorari on this ground.
The appellant also contends that the county's disapproval of the plat based on its growth management policy was an arbitrary and capricious exercise of the policy power. City of Boca Raton v. Boca Villas Corp., 371 So.2d 154 (Fla. 4th DCA 1979). But see Moviematic Industries Corp. v. Board of County Commissioners of Metropolitan Dade County, 349 So.2d 667 (Fla.3d DCA 1977). In light of our decision, we need not reach that issue.
In summary, the county is equitably estopped from denying approval of the subdivision plan after the developer made substantial expenditures in reliance upon the county's preliminary approval of the project. The decision of the circuit court is reversed and the county's disapproval of the plat is quashed.[2] If the appellants have satisfied all the conditions within the preliminary approval, to which final approval was subject, they are entitled to final approval of the plat.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] Appellant properly sought review of the county commission's decision by petition for writ of certiorari filed in the circuit court. The circuit court has jurisdiction through certiorari to review quasi-judicial decisions of a county commission. G-W Development Corp. v. Village of North Palm Beach Zoning Board of Adjustment, 317 So.2d 828 (Fla. 4th DCA 1975); accord, City of Pompano Beach v. Daniels, 327 So.2d 849 (Fla. 4th DCA 1976). Since the circuit court was acting in review of administrative action, appellant had a right of appeal from the circuit court's order denying certiorari to the district court of appeal. McCray v. County of Volusia, 400 So.2d 511 (Fla. 5th DCA 1981); Odham v. Petersen, 398 So.2d 875 (Fla. 5th DCA 1981); United Teachers of Dade v. Save Brickell Avenue, Inc., 378 So.2d 296 (Fla.3d DCA 1979); contra, City of Deerfield Beach v. Vaillant, 399 So.2d 1045 (Fla. 4th DCA 1981). Since this court is acting on plenary appeal from denial of a writ of certiorari, its scope of review is identical to that of the circuit court, and is to determine whether the county acted within its jurisdiction, whether it departed from the essential requirements of law, and whether its decision was supported by substantial competent evidence. Odham; McCray.
[2] This court, rather than reversing the circuit court's order denying certiorari and remanding to the circuit court to have the circuit court grant the writ and quash the county's decision, may itself exercise the circuit court's appellate jurisdiction and quash the decision of the county. Art. V, § 4(b)(3), Fla. Const. (1972).