488 So.2d 563 (1986)
Jack M. WAINWRIGHT, Appellant,
v.
STATE of Florida, Department of Transportation, Appellee.
No. BI-435.
District Court of Appeal of Florida, First District.
April 22, 1986.
W. Kirk Brown, Tallahassee, for appellant.
Maxine F. Ferguson, Tallahassee, for appellee.
*564 MILLS, Judge.
Jack M. Wainwright appeals from the revocation by the Department of Transportation (DOT) of his outdoor advertising permits, pursuant to Section 479.08, Florida Statutes (1984 Supp.). We reverse.
In 1972, in order to "remain eligible to receive the full amount of all Federal-Aid highway funds to be apportioned to it on or after January 1, 1968," the State of Florida agreed to make provisions "for effective control of the erection and maintenance... of outdoor advertising signs ... which are within six hundred and sixty (660) feet of the nearest edge of the right of way and visible from the main travelled way." To that end, Section 479.11(1), Florida Statutes, provides that "no sign shall be erected, used, operated, or maintained within 660 feet of the nearest edge of the right-of-way of any portion of the interstate highway system ..." except in commercial unzoned areas. Section 479.111(2).
Rule 14-10.09(I)(1)(B), F.A.C., defines "unzoned commercial area" as an area "within 660 feet of the nearest edge of the right of way ... in which there is located one or more commercial activities." The highlighted term is defined neither by rule or statute.
Anyone desiring to erect or maintain a sign on the interstate must first obtain a permit from DOT. Section 479.07(1). It was pursuant to this requirement that Wainwright applied for the subject permits in 1981. Millender, then an outdoor advertising inspector for DOT, inspected the proposed site off of Interstate 10 in Gadsden County for the purpose of determining its compliance with the zoning, distance and proximity to a "commercial activity" requirements of Chapter 479. The activity relied on by Wainwright was the operation of Imperial Nurseries, a business which grows ornamental shrubs above-ground for shipment to out-of-state markets. Imperial trucks in its own soil mixture, trucks out approximately 400 semi-truckloads of shrubs per year and employs 130 people. It was undisputed that the operation has not changed in character since 1981.
Millender, to whom, as stated above, DOT provided no rule or statutory guidelines for identifying a "commercial activity," determined "by looking at the site" that Imperial's operation qualified as such an activity. Kelley, the district administrator of outdoor advertising for DOT and Millender's supervisor, was aware of the nature of the "commercial activity" relied on. Although Kelley made no specific inquiry of his superiors regarding the commercial characterization of the activity for the purposes of Wainwright's applications, he had previously done so when another applicant relied on Imperial and had been informed by district right-of-way administrator Alfes that the permit could be issued. Kelley's signature appears on Wainwright's approved applications.
DOT renewed Wainwright's sign permits annually and he paid the appropriate fees therefor, until October 1984, when Wainwright was served with notice that his signs violated Chapter 479 in that they were in an area "not zoned or unzoned commercial." Wainwright requested and received an administrative hearing on these notices, during which DOT maintained that at the time of Wainwright's applications it had erroneously characterized Imperial's operation as "commercial," when in fact it fell under the excluded category of "agricultural activity" (also undefined by rule or statute). The "error" was revealed to DOT during a 1984 federal review of sign permits which it had issued. The revocations were initiated, according to DOT, to "establish control over outdoor advertising in the third district or face losing federal highway funds." To that end, current right-of-way administrator Culpepper testified that the agency was "going from a more liberal to conservative construction" of the same law.
Following the hearing, the hearing officer, finding that only DOT's interpretation of the law had changed and not the facts and circumstances under which the permits had originally been granted, recommended that the new interpretation should operate prospectively only and therefore that Wainwright's *565 permits should not be revoked. DOT rejected this recommendation and revoked the permits.
An administrative agency empowered to revoke a permit for reasons specified in a statute may not revoke such permit for any cause not clearly within the ambit of its statutory authority, as statutes which authorize revocation must be strictly construed. Federgo Discount Center v. Dept. of Professional Regulation, Board of Pharmacy, 452 So.2d 1063, 1066 (Fla. 3d DCA 1984); Rush v. DPR, Board of Podiatry, 448 So.2d 26, 27 (Fla. 1st DCA 1984). Here, the authorizing statute, Section 479.08, gives DOT the authority to revoke any permit granted under the chapter "in any case in which it determines that the application for the permit contains knowingly false or misleading information or that the permittee has violated any of the provisions of this chapter."
In this case DOT relied on the latter ground, maintaining that by placing his signs in what was later determined to be a non-commercial zone, Wainwright "has violated the chapter." We find that this contention misreads the plain language of the authorizing statute, which clearly requires an affirmative violation of the statute by the permittee. At the time of Wainwright's only affirmative action, the placement of his signs, they conformed to the law as DOT was interpreting it and as it continued to interpret it for the three years preceding the institution of revocation proceedings.
DOT places great reliance on the fact that the literal language of the permitting statute has not changed since issuance of these permits and therefore, the permits were illegal ab initio. However, in the absence of definition by rule or statute of the crucial term "commercial activity," the permitting statute plainly means what DOT interprets it to mean at any given time. It is thoroughly specious to argue that when that interpretation changes, at any time and for whatever reason, the permittee has violated the chapter so as to support revocation of his permits. Therefore, strictly construing, as we must, the statute authorizing revocation of outdoor advertising permits, DOT cannot use the vehicle of revocation for removal of Wainwright's signs.
Wainwright also argued below that if his signs were removed, he should receive compensation therefor under Section 479.24, since the signs were lawful when erected but later became nonconforming due to DOT's changed interpretation of the permitting statute. Section 479.24(1) provides that "[j]ust compensation shall be paid upon the removal of a lawful nonconforming sign along any portion of the interstate ... highway system." DOT rejected this claim, reiterating that the signs were illegal ab initio, and that such unlawfully erected signs were not subject to compensation under Section 479.24. LaPointe v. DOT, 398 So.2d 1370 (Fla. 1981).
However, in LaPointe, the appellant erected the subject sign without a permit. Here, as discussed above, Wainwright erected his signs in possession of a permit which DOT was authorized to issue and which conformed to the law under the interpretation then given it by DOT. See Sakolsky v. City of Coral Gables, 151 So.2d 433, 435 (Fla. 1963) (when a permit is intentionally and lawfully issued by the proper officers, it can have no other purpose than to authorize action by the permittee in accordance with its terms). Therefore, Wainwright is not barred from receiving compensation pursuant to Section 479.24 based on any initial illegality.
However, Section 479.24 goes on to provide that it does not apply to a sign "which is illegal at the time of its removal." A sign may lose its nonconforming status and become illegal at any time it fails to be permitted or maintained in accordance with all applicable laws, rules, ordinances or regulations other than the provision which makes it nonconforming. In this case, there is no allegation that Wainwright has ever failed to pay the proper fees or display the appropriate tags on his signs; the only provision of which he is in violation is "the provision which makes [his *566 signs] nonconforming," i.e. the requirement of commercial activity, the interpretation of which was herein altered. Therefore, Wainwright's signs are lawful and nonconforming and he is entitled to compensation pursuant to Section 479.24.
This section directs the department to "make every reasonable effort to negotiate the purchase of the [nonconforming] signs to avoid litigation and congestion in the courts." Failing that, the department "is authorized to use the power of eminent domain" pursuant to Chapters 73 and 74. Section 479.24(3)(a). The revocation of the permits herein is reversed and the case remanded with directions to follow these guidelines in the purchase of Wainwright's nonconforming signs.
SMITH and THOMPSON, JJ., concur.