FARMER, Judge,
dissenting.
If a private employer created a pension plan for his employees and, when one of his qualified employees retired in reliance on it, only then unilaterally terminated the plan and stopped paying benefits, we should not have to search for reasons to find against the employer in the retiree’s lawsuit for benefits. For, unlike a good many other employment benefits and perquisites, pension benefits are different. The retiree is usually especially vulnerable as to the ability to return to the job market and make “cover”. Even if he could, his dependency on the lost pension benefits for the necessaries of life would render almost any judicial relief ineffectual, or too late to matter.
*1378 Pension benefits are indeed different. A suit for one’s retirement income comes as close as anything I can imagine to dealing with a fundamental necessity of life. A contract respecting such income should come into court with a generous tolerance for the plight of the retiree, assuming the essentials of contract law have been met. Here, there is no serious suggestion by anyone that former Mayor Branca did not fully comply with all conditions precedent to retirement benefits under city ordinance 88-16. Nor does anyone deny that Mayor Branca retired on the basis of ordinance 88-16. In fact, he sought the opinion of the city attorney and an actuary hired by the city before he retired, both of whom told him that he was eligible and qualified for the specified benefits.
Frankly, I do not understand how the fact that his employer, the payor of his retirement funds, is a municipality empowers it to effect a non-consensual, unilateral termination of benefits to one of its retirees. Simply because the city exercises governmental powers does not entitle it to make a bargain with its employees and then decide not to live up to its agreement. The mere fact that it is a city no more enables it to stop paying agreed retirement benefits to one of its retired workers than it would authorize the city to refuse wages or salary to an employee for a days work. Even local government must follow the law. That the city was ill-advised to vote to set up this, perhaps too generous, plan is surely no reason to allow it to disavow any obligation to pay benefits to one of its qualified employees who retired in reliance on its terms. The fact that a contract turns out to be a bad one for one of the parties has never been any reason to relieve that party of his agreed duty to perform.
The city looks for its authority to cancel this plan in certain state constitutional and statutory provisions relating to the actuarial soundness of public employer retirement plans in Florida. But I do not understand how the fact that this plan may violate these provisions yields the conclusion that the city can just stop paying one of its retirees. I should have thought that the remedy for the constitutional/statutory violation would be to order the city to make the plan actuarily sound out of its own pockets (whether from tax increases or other revenues) but not to order it to stop paying retirement income. Shall we next order government to stop providing health care services at public hospitals because they are not economically managed or, in the terms used here, actuarily sound?
At bottom there seems to be a notion that local government — just because it is a government — can invite its employees to accept or continue employment with the promise of certain retirement benefits when they decide to retire, and then walk away from that obligation for reasons that the city alone has created and controlled. This eccentric idea has no support in the suggested actuarial difficulties of this retirement plan.
Local governments have long been equitably estopped from denying obligations that the government has itself created by its own conduct. See, e.g., Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla.1976), City of Lauderdale Lakes v. Corn, 427 So.2d 239 (Fla. 4th DCA 1983), and Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla. 2d DCA 1975). As then-Judge Grimes said in Town of Largo:
Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon.
309 So.2d at 573. If cities can be estopped from exercising their zoning and building regulation powers (where they have wide latitude) by this rule of fair play, surely the same rule can be used to bar the city from withholding retirement benefits from its own retiree.
The court’s perspective in this case is all askew. We should not be focusing on whether the city attorney was making legal *1379 or factual representations to its prospective retiree (probably it was a little of both), or whether the city was “under” Branca’s administration (even if it was, a majority of its legislative body had to, and did, vote for the plan), or whether the city has “standing” to seek a declaratory judgment as to the enforceability of one of its own laws (section 86.021 plainly allows “any person” to sue for such a declaration), or even whether actuarily unsound municipal retirement plans violate “public policy” (obviously they do). We should instead ask ourselves what is the real public policy which governs this situation.
The essential rationale for the constitutional and statutory provisions cited by the city, from which I deduce public policy, is not that, if a particular plan is unsound, no one should get paid their retirement. Rather, the policy is to ensure that all retirees actually get paid by making the plans financially trustworthy and capable of meeting reasonably foreseeable obligations. To deny benefits to a retiree where the plan is unsound but the city is able to pay is to shoot the patient rather than to find the cure.
This analysis is not affected one whit by the fact that Branca was the mayor when the plan was adopted, or that he was the lone beneficiary when the plan was terminated, or that he worked for only one year after the plan was adopted, or that his current term as mayor when he retired would not have netted him a full 20-years of service, or even that the city’s revocation of the plan was done by a duly adopted ordinance of the city repealing the plan. These may have been good arguments against adopting the plan in the first place. They hardly empower us to relieve the city of its bad judgment. The remedy for the bad judgment was for the citizens to rise up on election day and choose new stewards for their affairs. The remedy for the constitutional/statutory violations is, if Branca or another beneficiary should seek it, to enjoin the city to comply with the constitution and statutes by making the plan sound.
Feeling that we have focused on this case from the wrong view, I dissent.[7]

. I have no quarrel with the award of attorney’s fees to the beneficiary from the city. Otherwise, we should allow the city to cheat one of its employees but then require him to pay for the privilege.