George H. **DECARION,** James E. **Roberts,** and Krome Acres, **Inc., Plaintiffs,**

v.

**MONROE COUNTY,** a political subdivision of the State of Florida, Defendant.

No. 92–10006–CIV.

United States District Court, S.D. Florida.

May 19, 1994.

---

James Stewart Mattson, Mattson & Tobin, Key Largo, FL, for plaintiffs.

Joseph B. Allen, III, Key West, FL, for defendant.

## FINAL ORDER GRANTING SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Defendant's Motion for Summary Judgment (D.E. # 45) and Memorandum of Law in Support (D.E. # 46), filed November 29, 1993. Plaintiffs filed their Response and Motion for Sanctions [1] and to Stay Proceedings [2]

1. See note 3, infra.

2. Plaintiffs request that the Court stay these proceedings until the resolution of the appeal in a related state court action, *Decarion, et al. v. Mon-*

(D.E. # 59) on February 9, 1994. The Court heard oral argument on these issues on March 22, 1994 and directed the parties to file additional briefs on substantive due process which the parties subsequently did.

## I. HISTORICAL BACKGROUND

This case arises out of the denial of an infrastructure building permit by Defendant, Monroe County. Plaintiffs own approximately seventy-two acres of property located in Monroe County. In 1979, Plaintiffs initiated the procedure for obtaining approval from the County to construct a major development thereon, to be known as "Curry Cove." In 1986, Plaintiffs received Preliminary Major Development Approval for Curry Cove from Monroe County and on September 1, 1988, they received Final Major Development Approval.

The Final Major Development Approval authorized Plaintiffs to construct up to twenty-one multi-family buildings and to sell thirty-five single-family lots. However, the Final Major Development Approval contained various conditions that had to be fulfilled before final approval of the development would become effective. Condition 26 requires that "the project is to begin construction within one year (1) and 45 days after final approval ... and shall continue without substantial interruption for a period of twelve years after final approval." Defendant's Exhibit A. Condition 20 requires the Plaintiffs to submit a Plat after receiving Final Major Development Approval, however Condition 20 does not set a deadline for filing that Plat.

Plaintiffs began construction of one building within the one year and 45 day requisite. In August of 1989, Plaintiffs obtained a building permit to construct Building One. A condition of the permit required Plaintiffs to have inspections every 120 days; Otherwise, the permit would become null and void. The record reveals that Plaintiffs received three consecutive inspections for Building One on August 24, 1989, September 1, 1989 and Jan-

*roe County,* 92–503–CA–19 (Fin.Judg. Dec. 21, 1993). However, Plaintiffs provide no support for such a stay. Therefore, Plaintiffs Motion for Stay will be denied.

uary 3, 1990 in accordance with the conditions of the permit. (Defendant's Exhibits E, F & G). However, no further inspection occurred following January 3, 1990 thus causing the permit for Building One to become null on void 120 days thereafter. There is no evidence that Plaintiffs applied for any additional building permit during that time period.

On March 20, 1989, Plaintiffs submitted an application to the County for a building permit to construct the infrastructure at Curry Grove. Over two years later, the infrastructure permit was finally approved but County officials refused to issue the permit. On July 25, 1991, Plaintiffs filed suit in state court against the County officials seeking mandamus. The state court issued the mandamus relief and at trial, found that the County improperly withheld the infrastructure permit. Plaintiffs now bring the instant substantive due process action in this Court seeking damages under § 1983 for the denial of the infrastructure permit and Defendant moves for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Ca-*

trett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir.1993), *reh'g denied*, 16 F.3d 1233 (11th Cir.1994). To meet this burden, the non-moving party must go beyond the pleadings. If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Id.* However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

This action is a substantive due process claim brought under Title 42 U.S.C. § 1983. Plaintiffs claim that in denying the infrastructure permit, the County deprived them of their substantive due process rights to the use and enjoyment of Curry Cove.

The facts as articulated above are not in dispute. Indeed, the Court finds that there are no disputed issues of material fact to preclude summary judgment.[3] The issues in

---

**3.** Plaintiffs argue that at least two disputed issues of material fact exist to preclude summary judgment. First, Plaintiffs argue that the record evinces a material dispute as to whether or not the County's determination that the Final Major Development Approval for Curry Cove had expired was rational. Secondly, Plaintiffs argue that the affidavit of Monroe County's Planning Director, Lorenzo Aghemo, setting forth the explanation for the County's determination that the development order had expired is contradictory to prior testimony taken at Aghemo's deposition.

These issues, while certainly in dispute, are not material issues of fact. First, a determination of whether the County's denial of the infrastructure permit was rational involves issues of law to be applied to the facts. Secondly, the Aghemo testimony presented in the record is not contradictory by nature. In fact, the Court finds it to be consistent. Mr. Aghemo merely stated at his

deposition in August, 1992 that he could not recall why the permit was withheld, and later in his November 23, 1993 affidavit, after review of his records, he recalls the reasons for the County's denial of the permit. The Court does not find that this testimony presents a disputed issue of material fact. Plaintiff has offered no evidence to contradict Mr. Aghemo's affidavit. Plaintiff simply concludes that since Mr. Aghemo could not originally recall the reasons for the denial of the permit, the explanations later articulated in his affidavit must be fabricated. Such conclusory allegations are unfounded and Plaintiffs request for sanctions against Mr. Aghemo and his attorneys on this basis is without merit. In the absence of additional conflicting evidence, the Court does not find the articulated reasons for the County's denial of the permit raise a material issue of fact sufficient to preclude summary judgment.

dispute are legal in nature and thus appropriate for summary disposition. Specifically, the issues are: (1) whether Plaintiffs have a protected property interest in the infrastructure permit, and (2) if so, whether the County's denial of the permit was "arbitrary and capricious."

### A. Do Plaintiffs have a protected property interest in the infrastructure permit?

■ The Constitution protects the right to maintain property, however it does not create any particular property interests. "[S]uch interest are created by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

In this case, Florida law determines whether Plaintiffs have a constitutionally protected property right in obtaining the infrastructure permit for federal due process purposes.[4] Whether Florida's state law doctrine of vested property rights gives rise to a protected property interest is an issue that has been widely debated in the Eleventh Circuit. The result has been a line of complicated precedent that has been difficult to follow and apply. *See Lake Jackson, supra.*

The County cites two cases for their position that Florida law does not recognize a protected property interest in a building permit. The County's reliance on these cases, however, is misplaced.

The first case is *Marine One, Inc. v. Manatee County*, 877 F.2d 892 (11th Cir.1989). In that case, the Eleventh Circuit held that "Florida law is clear that there is no property right in possession of the permit [authoriz-

ing construction of a marina]." *Id.* at 894. However, the Eleventh Circuit later reconsidered this holding in the second *Marine One* decision, *Marine One, Inc. v. Manatee County*, 898 F.2d 1490 (11th Cir.1990), in which it considered a motion for rehearing to determine whether three prior decisions of the Court[5] had held that Florida law did recognize a property interest in the possession of building permit. The significance of the second *Marine One* opinion is not that it answered this question, because it never reached it, rather it is that the Court limited its prior holding by drawing a distinction between public and private property. Specifically, in denying the rehearing, the court distinguished the facts of *Marine One* from the three prior decisions on the grounds that *Marine One* involved a permit to build a marina on *public* land, not private land. Thus, *Marine One* holds only that there is no protected property right to a permit to build or develop on *public* land.

The second decision relied upon by Defendant is *Mackenzie v. Rockledge*, 920 F.2d 1554 (11th Cir.1991). In that case, the Eleventh Circuit again held that there is no property interest in a permit to build a marina, citing its prior holding in *Marine One. Id.* However, the *Mackenzie* decision makes no mention of the second *Marine One* decision, nor does it even allude to the public/private distinction drawn therein. Thus, the *Mackenzie* opinion is unreliable. *Lake Jackson*, 796 F.Supp. at 1487, and *Corn v. Lauderdale Lakes*, 771 F.Supp. 1557, 1568 (S.D.Fla.1991), *aff'd in part and reversed in part on other grounds, remanded,* 997 F.2d 1369 (11th Cir. 1993), *and cert. denied,* — U.S. —, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

Without *Mackenzie* or *Marine One*, there is no basis for the blanket conclusion that no property right exists in the possession of a

---

4. "A development permit [] is typically a creature of ordinance and statute, and entitlement to issuance of such a permit often is determined by satisfaction of the 'substantive predicates' set by law as conditions for issuance of such permits. Depending upon the underlying state law, those 'substantive predicates' in an appropriate case might give rise to a property interest protected by due process." *Villas of Lake Jackson, Ltd. v. Leon County*, 796 F.Supp. 1477, 1486 (N.D.Fla. 1992).

5. The three prior decisions being considered were *A.A. Profiles, Inc. v. Ft. Lauderdale*, 850 F.2d 1483 (11th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989); *Wheeler v. Pleasant Grove*, 664 F.2d 99 (5th Cir. 1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982); and *Corn v. Lauderdale Lakes*, 816 F.2d 1514 (11th Cir.1987).

building permit. Indeed, the Eleventh Circuit recently said as much in an opinion handed down last month.

In *Reserve, Ltd. v. Longboat Key*, 17 F.3d 1374 (11th Cir.1994), the Eleventh Circuit attempted to clarify the confusion created by its prior precedent. Renouncing the broad interpretations of *Marine One* and *Mackenzie* urged by the County, the Eleventh Circuit held that under Florida law, a developer has a due process property interest in a building permit after expending large sums of money in reliance on the permit. After obtaining the town's approval of the site plans for a spa complex to be constructed on Longboat Key, the developer obtained a building permit from Longboat Key to construct 57 condominium units and a spa on the property. Construction apparently began on the project but thereafter Longboat Key revoked the permit pursuant to an ordinance which provided that a permit would be revoked if substantial work was not completed within any thirty day period. The developer sued Longboat Key alleging in part that the permit was arbitrarily and unreasonably revoked in violation of their substantive due process rights. The trial court found that the developer had no protectible property interest in the permit and therefore granted summary judgment on the substantive due process claim in favor of Longboat Key. The Eleventh Circuit reversed. Noting that its prior attempts at interpreting Florida law on this issue have resulted in some confusion, the Court resolved the question by following the Florida courts, which "have consistently held that a landowner has a property right in a building permit 'where the landowner possesses a building permit and where the circumstances that give rise to the doctrine of equitable estoppel are present.'" *Id.* at 1380 (citing *City of Hollywood v. Hollywood Beach Hotel Co.*, 283 So.2d 867, 869 (Fla.Dist. Ct.App.1973), *aff'd in part, rev'd in part on other grounds*, 329 So.2d 10 (1976)). The Court found that under Florida law the developer had a vested property right to the permit because it possessed a building permit and expended large sums of money in reliance on it. Therefore, the Court concluded, the developer "had a property interest protectible under the Fourteenth Amendment." *Id.* at 1381.

The facts of the instant case differ from the facts in *Reserve* in that the infrastructure was not issued and then revoked, it was never granted. However, this fact does not alter the analysis as Plaintiffs had a vested property interest in the Final Major Development approval and had met all statutory requirements for obtaining the infrastructure permit in reliance on the Final Approval. Furthermore, the County had no discretion to deny the infrastructure permit. Courts have found that equitable estoppel may create property interests in obtaining permits even where no permits have been issued, where the statutory prerequisites have been met and the agency had no discretionary power to deny the permit. *Lake Jackson*, 796 F.Supp. at 1489; and *see Corn*, 771 F.Supp. 1557 (no permit had been issued yet the court found a sufficient property interest in obtaining the permit to sustain a takings claim), and *Sakolsky v. Coral Gables*, 151 So.2d 433 (Fla.1963) (only preliminary approval had been obtained yet equitable estoppel was allowed).

Thus, the question facing this Court is "whether circumstances exist in the instant case that give rise to the doctrine of equitable estoppel, under Florida law, so as to give [Plaintiffs] a property right in its building permit." *Id.* at 1380. As the Eleventh Circuit noted in *Reserve*, "[u]nder Florida law, the doctrine of equitable estoppel may be invoked by a landowner where that landowner, relying '(1) in good faith (2) upon some act or omission of the government[,] (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy. the right he acquired.'" *Id.* at 1380 (citing *City of Hollywood*, supra, at 869 (citing *Sakolsky, supra*)).

Here, Plaintiffs expended over $7 million dollars on the development project at Curry Cove in reasonable reliance on the County's zoning of the property and land development regulations. (Amended Complaint, p. 8). The County argues that the bulk of this amount was spent prior to obtaining Final Major Development Approval in an effort to

meet statute prerequisites and should not be considered for estoppel purposes because "expenditures used 'to fulfill legitimate conditions precedent to the issuance of a permit [do not] establish reliance.'" (Motion for Summary Judgment, p. 12, citing *Mackenzie,* 920 F.2d at 1559). The County argues that only the period the Court should consider in determining the appropriateness of equitable estoppel is from September 1, 1988—the date of the Final Major Development Approval— to July 25, 1991—the date Plaintiffs sought mandamus relief in state court.

Given the Eleventh Circuit's recent criticism of *Mackenzie,* it is not clear that the County's reliance on that case is well founded. Indeed, the Court cites the County to the *Lake Jackson* opinion where the district court states:

> [E]quitable estoppel may create rights to obtain permits if the owner expends significant sums of money in reliance upon existing zoning and *preliminary approvals* obtained from the regulatory governmental body even though final approvals have not yet been obtained.

796 F.Supp. 1477 (N.D.Fla.1992) (emphasis added). Under this line of reasoning, the appropriate period for estoppel consideration would begin on August 12, 1986, the date Plaintiffs received Preliminary Major Development Approval. (Amended Complaint, p. 3).

Nonetheless, even under the County's theory, the Court finds that Plaintiffs substantially changed their position in reliance on the Final Major Development Approval. After September 1, 1988, Plaintiffs expended and obligated approximately $2 million in reasonable reliance on the Final Approval. Plaintiffs obtained a building permit for Building One, laid the foundation, completed inspections and were preparing to begin construction on the infrastructure—an integral phase of the development—when the County's 100–day delay and ultimate denial of the infrastructure permit interrupted them. The Court would be hard pressed to find that these actions do not amount to a "substantial change in position" in reliance on their right to develop Curry Cove.

Thus, the Court concludes that Plaintiffs had a protected property interest in obtaining the infrastructure permit and that the County's refusal to issue the permit deprived them of a constitutionally protected interest.

**B. Was the County's denial of the infrastructure permit arbitrary and capricious?**

 Having found that Plaintiffs were deprived of a protected property interest, the Court must now consider the second prong of the substantive due process analysis: whether the deprivation of that property interest was "for an improper motive, and by means that were pretextual, arbitrary and capricious, and ... without rational basis." *Reserve,* 17 F.3d at 1378 (*citing Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982)).

In their briefs, the parties focus their debate on the proper test to be applied to an arbitrary and capricious substantive due process claim. Therefore, the Court will first address the proper standard to be applied in this case.

The County argues that its decision to refuse the infrastructure permit is not "shocking to the conscience" and therefore is not arbitrary and capricious. Plaintiffs counter that the "shock the conscience" test alluded to by the County looks for a racial or personal "animus," and is inconsistent with the arbitrary and capricious test adopted in this Circuit for cases not involving excessive force. Plaintiffs contend that the proper test in this Circuit is whether there has been an abuse of governmental power—undertaken for an improper motive, by pretextual means, arbitrary and capricious, and without any rational basis." (Plaintiffs' Memorandum of Law on Substantive Due Process, p. 3).

The County does not disagree with Plaintiffs' statement of the test. The County simply argues that the "shocks the conscience" test is not a different standard. The County relies on the Sixth Circuit's use of the "shock the conscience" terminology in *Pearson v. Grand Blanc,* 961 F.2d 1211, 1221 (6th Cir. 1992) to "emphasize the degree of arbitrariness required to set aside a zoning [or permit] decision by local authority." While the *Pearson* decision provides a well-written and

thorough examination of the arbitrary and capricious tests applied amongst the Circuits, the Court declines to adopt its "shock the conscience" language to define what constitutes arbitrary and capricious action in light of a recent Eleventh Circuit case which suggests that this Circuit has rejected the use of a "shocks the conscience" test in the context of civil cases for damages. In *McKinney v. Pate*, 20 F.3d 1550, 1567 (11th Cir.1994), a § 1983 substantive due process action in the employment context, the Eleventh Circuit dropped a footnote which states:

> An alternate substantive due process test finds a violation if the questioned governmental action "SHOCKS the CONSCIENCE" of federal judges. (citation omitted). [This] ... standard has no place in a civil case for money damages.

Whether the Eleventh Circuit would reject *Pearson*'s use of the shock the conscience test in the context of zoning/permit cases is unclear. However, this Court's decision not to does not alter the analysis, because the Court has determined that even under the Eleventh Circuit test as stated by Plaintiffs, the County's decision to deny the infrastructure permit was not arbitrary and capricious such that it would rise to the level of a constitutional violation.

The County asserts that the denial of the infrastructure permit was based on the reasonable belief that the Final Major Development Approval had expired in May 1991. The basis of this decision, according to the County, was (1) the fact that the permit for Building One had expired; (2) the fact that no construction activity had occurred on the site since the first-floor plumbing inspection on January 3, 1990; and (3) the fact that the Plaintiffs had not recorded a Plat as required by Condition 20 of the Final Major Development Approval. In support, the County offers an affidavit of Lorenzo Aghemo, the Planning Director of Monroe County, which confirms these reasons for the denial of the infrastructure permit.

Plaintiffs counter that the County's denial of the infrastructure permit was arbitrary and capricious and without rational basis because "no reason was given for the denial of the permit, at least until Aghemo's falsified Affidavit 2-½ years later, and [because] procedural due process protections were not afforded." (Response, p. 10) (emphasis omitted). The Court has previously considered and rejected Plaintiffs' argument regarding the truthfulness of Aghemo's affidavit. *See* n. 3, supra. To be clear, the Court reiterates its finding that Aghemo's affidavit is not inconsistent with his prior deposition testimony and will thus be given appropriate weight. As to the lack of procedural protections alleged, Plaintiffs offer no evidence or specific allegations to support this charge. Furthermore, even if Plaintiffs could point to the procedural protections denied, the absence of such protections is not sufficient to support a finding that the County acted arbitrary and capriciously for purposes of a substantive due process claim. Arbitrary and capricious for substantive due process purposes means that the County acted with an improper motive, without reason or upon a reason that was merely pretextual. To make such a determination, the Court looks to the reasoning used by the decisionmaker in making its determination, not to the procedures followed.

Plaintiffs have not alleged that the County's denial of the permit was prompted by improper motive or by means that were pretextual. Plaintiffs simply argue that the reason provided is insufficient, relying on the mandamus relief obtained in state court. Without more, such reliance is misplaced. Although the state court determined that the County's decision to deny the permit was incorrect, it does not necessarily follow that the decision was arbitrary and capricious. It is well-settled that not every erroneous government decision rises to the level of a constitutional tort for purposes of a § 1983 substantive due process claim. *Spence v. Zimmerman*, 873 F.2d at 260 n. 5; *Couf v. De Blaker*, 652 F.2d 585 (5th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982).

The County has offered a reasoned explanation for its refusal to issue the permit. The Final Major Development Approval under which the permit was to be issued had lapsed as of May 1991. The evidence in the record supports the County's determination

that construction had not continued without substantial interruption as required by Condition 26 of the Final Approval. Since obtaining the Final Approval, Plaintiffs had begun construction on only one building and had let that building permit expire by not continuing to have the project inspected every 120 days.[6] When the County refused to issue the infrastructure permit, no construction had taken place for over a year. It is not unreasonable to assume that such a lapse constitutes a "substantial interruption." Furthermore, at the time of the County's decision, no Plat had been recorded as required by Condition 20 of the Final Approval. Although Plaintiffs had submitted a Plat on November 9, 1990, the County Planning Director had rejected it, instructing Plaintiffs that the Plat contained deficiencies which had to be corrected before it could be recorded. Plaintiffs never submitted a corrected Plat. On these facts, the Court cannot find that the County's decision was arbitrary and capricious and without rational basis.

### IV. CONCLUSION

Thus, the Court holds that the County's denial of the infrastructure permit deprived Plaintiffs of a protected property interest but was not made "for an improper motive, and by means that were pretextual, arbitrary and capricious, and ... without rational basis" such that it rises to the level of a constitutional tort. *Reserve,* 17 F.3d at 1378 (citation omitted). Accordingly, summary judgment will be entered in favor of Defendant, Monroe County.

For the reasons stated herein, and the Court being otherwise fully advised, it is therefore

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment (D.E. # 45) be, and the same is hereby, GRANTED, and it is further

ORDERED and ADJUDGED that Plaintiffs' Motion for Sanctions and to Stay Proceedings (D.E. # 59) be, and the same is hereby, DENIED. All pending motions are

hereby rendered moot and the Clerk is directed to close the above styled matter.

DONE and ORDERED.

---

**6.** The last inspection took place on January 3, 1990. Thus, the permit for Building One expired on or about April 3, 1990.