427 So.2d 239 (1983)
CITY OF LAUDERDALE LAKES, a Florida Municipal Corporation, Howard Craft, Mayor of the City of Lauderdale Lakes; Alfonso Gereffi, Jerome J. Cohan, Morris Klein, Lyman L. Allen, Louis Greenwald, Harry Kaufman, City Councilmen; and Ben Eigner, Building Official, Appellants,
v.
Herman CORN, Trustee, Appellee.
No. 78-2438.
District Court of Appeal of Florida, Fourth District.
February 16, 1983.
*240 James C. Brady, Fort Lauderdale, and Mallory H. Horton of Horton, Perse & Ginsberg, Miami, for appellants.
Gary M. Farmer of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellee.
HERSEY, Judge.
The city appeals from a final judgment invalidating certain zoning ordinances as they refer to appellee and to specific real property owned by appellee, requiring the city to approve a site plan (conditioned upon the correction by appellee of three specified deficiencies) and, ultimately, to issue a building permit.
Prior to June, 1966, appellee acquired 261 acres of real property in the unincorporated area of Broward County. After preliminary negotiations with the city (there is a conflict of testimony, unresolved in the circuit court, as to which party initiated these negotiations), appellee presented the city with a proposed development plan. The parcel was then annexed by the city and three ordinances were adopted zoning the property in accordance with the previously approved development plan. Appellee proceeded over the next several years to develop the property as permitted by the ordinances and as contemplated by the plan.
In 1969 the city attempted to change the zoning of a portion of appellee's property to prohibit a contemplated project permitted *241 by the original zoning. Litigation ensued resulting in a judgment holding that the city was estopped from changing the zoning. No appeal was taken from that judgment.
The next activity of consequence concerns the portion of the property specifically in issue here. That parcel is zoned C-1A, a commercial use zone, and lies immediately north of a canal designated as C-13. According to appellee the canal was so located to insulate residential areas from this commercial property. Pursuant to applicable ordinances appellee filed, for approval, a proposed set of preliminary site plans for a shopping center in one area of the commercial property and a mini-warehouse complex on the westernmost portion of that parcel. The various city departments and officials processed the site plans and after sundry amendments and recommendations, the site plan along with the Planning and Zoning Board's recommendation of approval was presented to the City Council, at a public meeting on May 31, 1977. After discussion about the assessed valuation of the land and a comment directed toward aesthetics the matter was tabled. It was reconsidered and again tabled at meetings on June 14, 1977, and June 21, 1977, and at the latter meeting was rescheduled to be considered on July 12, 1977.
At the meeting of July 12, 1977, the City Council for the first time discussed changes in the zoning code to eliminate mini-warehouses as a use permitted in property zoned C-1A (Ordinance # 548) and to change the classification of appellee's parcel from C-1A to B-3 (Ordinance # 549). These ordinances were adopted. Another ordinance, # 552, imposing a building moratorium on appellee's property was also proposed and it was adopted at a subsequent meeting. After adoption of the two ordinances the council took up the matter of appellee's preliminary site plan. The council voted unanimously to deny approval. This litigation ensued.
The circuit court ultimately entered a final judgment which contained findings of fact concluding that events transpired much as recorded in the foregoing synopsis and including the following specific findings which are particularly pertinent to this appeal.
The evidence presented in this case indicates that the Plaintiff's efforts were in accordance with the development plan submitted to and approved by the City, and further, that the entire cost of the initial land development was borne by the Plaintiff. These costs included, but were not limited to, land clearing, demucking, filling and grading of the land and the construction of a system of canals and waterways throughout the 261-acre parcel of land. This system of canals and waterways specifically included the canal known as the C-13 canal, which separated the C-1A property from other residentially-zoned acreas [sic] within the 261 acres.
... .
The evidence further establishes that the Plaintiff in this cause has expended in excess of $100,000.00 in preparing the C-1A property to be developed in accordance with the previously approved Ordinances # 103 and # 105. These sums were expended in reliance upon the City's action with reference to the assignment of the C-1A classification to the property in question. They would have not been expended had it not been for the action of the City in designating the property under the zoning classification of C-1A.
... .
Prior to July 12, 1977, the City of Lauderdale Lakes sent or published no notices to the Plaintiff of any public hearing to be held on the question of whether or not Plaintiff's C-1A property should be rezoned or that a hearing would be held on any specific re-zoning proposal. In fact, the City of Lauderdale Lakes had made no effort whatever to re-zone Plaintiff's C-1A property from July 12, 1966, to July 12, 1977, a period of 10 years.
... .
The Court finds from the evidence presented that Ordinances # 548, # 549 and # 552 were enacted by the City improperly and not in accordance with the requirements of the City Charter. Further, the evidence specifically indicates that the City Council was reacting to the *242 demands of the residents of the near-by condominium building (the Amicus Curiae herein) and was attempting to satisfy the demands of these residents without consideration for the rights of the Plaintiff herein pursuant to the Ordinances of the City of Lauderdale Lakes.
Finally, the Court finds from a review of all of the evidence that the preliminary site plans presented by the Plaintiff with reference to the proposed mini-warehouse/shopping center development contained 3 specific deficiencies. It is the further finding of the Court that these deficiencies were before the City Council, but the City Council did not provide the Plaintiff with an opportunity to correct the deficiencies in question. The evidence establishes that the City Council was required to give the Plaintiff the opportunity to correct the deficiencies; and when the corrections were made, the Ordinances of the City of Lauderdale Lakes would require the City Council to approve final site plans.
The final judgment determined that because appellee not only expended money but also made substantial physical changes in the land in reliance upon the city's undertaking in adopting the original zoning ordinances, it would be grossly unfair at this late date to permit the city to change the zoning. The trial court further declared ordinances numbered 548, 549 and 552 invalid and unenforceable for failure of the city to follow its own notice and procedure requirements and for lack of evidence to support a showing that these ordinances "were enacted as a result of compelling reasons or [of  sic?] public health and safety."
The trial court held that the city was "estopped to deny Plaintiff's [appellee's] rights in [the original] zoning classification." The court then directed the city to approve the site plan when the designated deficiencies had been corrected and in due course to issue an appropriate building permit.
The city suggests four impediments to the validity of the final judgment. We address the issues as presented by appellant city.

I

WAS RELIEF BY WAY OF MANDAMUS LEGALLY SUSTAINABLE UNDER THE FACTS AND LAW OF THIS CASE.
Relying on case law holding that mandamus will not lie to compel the doing of a discretionary act, the city points to language in appellee's petition for mandamus complaining that the City Council "failed to exercise good faith in the discharge of their judgment and limited discretion for the preliminary approval of site plans." Appellant cites State ex rel. Zuckerman-Vernon Corp. v. City of Miramar, 306 So.2d 173 (Fla. 4th DCA 1974) in support of its proposition that mandamus is not available under such circumstances.
In Broward County v. Narco Realty Inc., 359 So.2d 509 (Fla. 4th DCA 1978) we receded from any suggestion which might be taken from the language in Zuckerman-Vernon Corp. that mandamus never lies to require approval of a plat. We specifically held in Narco Realty Inc. that where all of the legal requirements for platting land have been met there is no residual discretion to refuse plat approval and mandamus will lie. The same reasoning applies to approval of site plans. Here disapproval was not based upon the three technical deficiencies but instead followed from a change in zoning. That change having been invalidated there is no impediment to requiring the formality of approval upon the correction of those deficiencies. No element of discretion remains once the legal requirements have been met. As we said in the Narco Realty Inc. case:
All persons similarly situated should be able to obtain plat approval upon meeting uniform standards. Otherwise, the official approval of a plat application would depend upon the whim or caprice of the public body involved. Yokley, in his work, Law of Subdivisions, § 52, states:
"Thus, while public policy requires municipal control of such development, nevertheless, the authority of a town to deny a landowner the right to develop his property by refusing to approve the plat of such development is, by statute, *243 made to rest upon specific standards of a statute or implementing ordinances. Thereafter, the approval or disapproval of the plat on the basis of controlling standards becomes an administrative act."
Likewise, in Section 53 of the same work, the author states:
"When the statutes and ordinances have been complied with in making a plat of a subdivision, the active approval by a village board has been held to be ministerial, and such act may be enforced by a writ of mandamus."
4 Anderson, American Law of Zoning (Second Edition) § 26.04, (1976) states:
"Mandamus to compel plat approval has been successful where the court, applying common-law principles, determined that when a subdivider has complied with all of the standards for plat approval, such approval is a ministerial act which the court may compel through a writ of mandamus. .. ."
Id. at 510.

II

WAS THERE COMPETENT SUBSTANTIAL EVIDENCE TO SUPPORT THE COURT'S CONCLUSION THAT THE APPELLEE HAD EXPENDED IN EXCESS OF $100,000.00 IN PREPARING THE PROPERTY IN QUESTION FOR DEVELOPMENT PURSUANT TO ORDINANCES 103 AND 105 AND THAT SUCH EXPENDITURES WERE MADE IN RELIANCE UPON THE CITY'S ACTION WITH REFERENCE TO THE CLASSIFICATION OF THE PROPERTY IN QUESTION AND A 1969 LAWSUIT.

III

WAS IT ERROR FOR THE TRIAL COURT TO FIND THAT THE APPELLEE HAD A VESTED RIGHT TO THE ZONING CLASSIFICATION C-1A PERMITTING THE ERECTION OF MINI-WAREHOUSE/SHOPPING CENTER.
In essence appellant argues that there was not substantial competent evidence to support the application of an equitable estoppel against the city.
It is well established that "[a]n owner of property acquires no vested rights in the continuation of existing zoning or land use regulations as to such property unless matters creating an estoppel against the zoning authority have risen." City of Gainesville v. Cone, 365 So.2d 737, 739 (Fla. 1st DCA 1979). Thus a municipality "may be equitably estopped to enforce a change in zoning regulations against one who has substantially altered his position in reliance upon the original regulation, ... ." City of Miami Beach v. 8701 Collins Ave., 77 So.2d 428, 429 (Fla. 1954). The test for application of the doctrine is stated succinctly in Town of Largo v. Imperial Homes Corporation, 309 So.2d 571, 572 (Fla. 2d DCA 1975):
The doctrine of equitable estoppel is applicable to a local government exercising its zoning power when a property owner
(1) relying in good faith
(2) upon some act or omission of the government
(3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired.
The final judgment determined that appellee relied in good faith upon zoning enacted by the city to induce him to request annexation of his property by the city and that he (1) expended considerable sums of money and (2) substantially changed the nature and contour of the land and its drainage system because of that reliance. Accordingly, the judgment concluded it would be grossly unfair to permit the city to change the zoning in mid-stream. The findings of fact are supported by substantial competent evidence and the conclusions of law follow logically from the findings. We are not permitted and we therefore have not attempted to reweigh the evidence or to consider the relative credibility of testimony.
*244 We come, then, to appellant's final point on appeal.

IV

WAS IT ERROR FOR THE COURT TO DIRECT THE CITY TO APPROVE SITE PLANS AND ISSUE A PERMIT UPON THE CORRECTION OF CERTAIN DEFICIENCIES IN SAID PLAN AND IN EFFECT TAKE AWAY FROM THE APPELLANT THE DISCRETIONARY DUTIES OF THE LEGISLATIVE BODY.
To the extent that appellant's statement of this argument raises the issue of the discretionary power of the municipality to act or not to act where all legal requirements have been met, we refer back to our conclusions under Point I. The new ordinances were struck down for failure of the city to fulfill its own notice and procedural requirements. The implication that this is an interference with a legitimate exercise of the legislative prerogative is unwarranted. To the extent, also, that the point suggests that approval of a plat or a site plan is a legislative function, we disagree and adhere to the view that such a function is administrative rather than legislative.
Of ultimate importance, however, is the fact that the city has been found to be equitably estopped from changing the zoning. To suggest that this usurps a legislative function or that the discretion remains nonetheless to thwart appellee's site approval would not only be counter-productive but indeed a contradiction in terms and a reversal of the legislative and judicial roles. Obviously circumstances may be envisioned which would preclude an estoppel as where the public health or safety is placed in jeopardy. In the absence of evidence of some such factor, however, a municipality will be held to the same standards of fair dealing that are applied to other entities. That was done here and we find no error.
In light of our holding that the doctrine of equitable estoppel requires affirmance of the judgment under review we do not consider whether application of the doctrine of estoppel by judgment based upon the 1969 judgment would similarly support an affirmance.
Having determined that the final judgment is supported by substantial competent evidence, we affirm.
AFFIRMED.
ANSTEAD and BERANEK, JJ., concur.