**RESOLUTION TRUST CORPORATION, as Receiver for Broadview Federal Savings Bank, and Sentinel Communities, Inc., d/b/a Hidden Harbor Development Company, Plaintiffs–Appellees,**

v.

**TOWN OF HIGHLAND BEACH, Defendant–Appellant.**

**Nos. 92–4462, 92–5097.**

United States Court of Appeals, Eleventh Circuit.

April 19, 1994.

---

Patrice A. Talisman, Sam Daniels, Paul, Landy, Beiley & Harper, P.A., Miami, FL, George P. Roberts, Jr., Roberts & Reynolds, West Palm Beach, FL, Defendant–Appellant in No. 92–4462.

John C. Dotterrer, Winthrop, Stimson, Putnam & Roberts, Palm Beach, FL, Margaret L. Cooper, Jones, Foster, Johnston & Stubbs, P.A., W. Palm Beach, FL, Randee S. Schatz, Palm Beach, FL, for plaintiffs-appellees in No. 92–4462.

Sam Daniels, Patrice A. Talisman, Paul, Landy, Beiley & Harper, P.A., Miami, FL,

George R. Roberts, Sr., Roberts & Reynolds, West Palm Beach, FL, for defendant-appellant in No. 92–5097.

John C. Dotterrer, Michael J. Kennedy, Winthrop, Stimson, Putnam & Roberts, Palm Beach, FL, Margaret L. Cooper, Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, FL, for plaintiffs-appellees in No. 92–5097.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the district court's grant of injunctive relief and a jury verdict for damages against a municipality that attempted to deny to a residential property developer property interest that vested due to the municipality's earlier activities.

### FACTS

In 1969 and 1970, Paul and Camile Hoffman acquired approximately 24.8 acres of land extending from the Atlantic Ocean to the intracoastal waterway in the town of Highland Beach, Florida (the Town). In 1974, to permit development of the property, the Town Commission (Commission) adopted zoning ordinance 228 approving residential plan unit development (RPUD–II), consisting of 846 units on the Hoffman's property.[1] On July 1, 1975, the Town passed Ordinance 282, which amended ordinance 228 and provided:

> 2. Any real property zoned or classified as ... RPUD–2 ... at the time of passage of this ordinance shall continue to be so classified for a minimum period of one (1) year from the effective date of the ordinance.
>
> 3. Ordinance No. 228 and No. 247 are amended to provide:

> A. That the approval of the RPUD's in such ordinance(s) are effective for a period of one (1) year from the effective date of this ordinance, in the event that one or more building permits have been applied for ... within the aforementioned one (1) year period in order to commence construction on one or more buildings of the said RPUD developments, then the aforementioned applicable RPUD shall remain in full force and effect. Provided, however, that in any event building permits shall be applied for all buildings included within the RPUD approval and all such buildings shall be completed within ten (10) years of the effective date of this ordinance.
>
> . . . .
>
> 4. The Town of Highland Beach must grant an extension of time period allotted within which application for permit must be made upon application by a property owner if that property owner presents evidence to the town commission that he has incurred delay in the securing of necessary governmental approvals in accordance with the RPUD which the Town granted.
>
> . . . .
>
> B. In any event application(s) for permit(s) from the Town of Highland Beach must be made within the time period allotted in paragraph 3(A) of this ordinance or within sixty days of the receipt of the permit, license, or similar documentary approval from each and every applicable governmental agency, whichever is later. . . .

In January, 1980, the Hoffmans, through Hidden Harbor Associates, formed a joint venture with Sentinel Communities, Inc., and Zaremba Harbor Company to construct the RPUD–II (joint venture).[2] After forming the joint venture, Hidden Harbor redesigned the RPUD, reducing its density from 846 to 620 units, and applied for approval of the new design. On January 17, 1980, Hidden

---

* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The district court concluded that as a matter of law the Town Commission is the highest policy-making body of the town of Highland Beach.

2. The Hoffmans entered the joint venture under the auspices of Hidden Harbor Associates, a corporation which they controlled.

Harbor contracted to purchase 17.5 acres of the RPUD.[3] The Town issued its first construction permits on August 8, 1980.

On October 7, 1980, the Town adopted Ordinance 389, approving the redesigned RPUD, renamed as "Hidden Harbor Club." After approving the redesigned RPUD, the Commission met and discussed the completion date of the development at a workshop meeting on October 28, 1980. At the meeting, the Commission interpreted Ordinance 282 as requiring completion of RPUD's within ten years of the issuance of the first building permit and determined that the RPUD expired on August 8, 1990, because it granted the first construction permit on August 8, 1980.

On the advice of the town's attorney, the Commission directed Mayor Lewis Y. Horton to inform the joint venture of the RPUD's completion date, "for the record." In his letter dated October 30, Mayor Horton confirmed the completion date.

> As you know, Ordinance No. 389 was approved unanimously on October 7th, 1980, at the Meeting of the Town Commission.
>
> At that Meeting, we discussed the necessity of working out a completion date to conform with requirements set forth in Ordinance No. 282.
>
> Inasmuch as a permit was issued for the start of construction for your project, we feel that the time clock has started. Therefore it is our conclusion that the project under RPUD–2 should be *completed* by August 8, 1990. [Emphasis in original.]

Mayor Horton sent copies of this letter to the Town manager and the town attorney and made a report of doing so to the Commission at its next meeting. Relying upon this interpretation, which became the Town's official philosophy, the joint venture invested over $8,000,000 to prepare the site and begin construction.

In 1982, a Town Bulletin informed the registered voters that the completion date for the RPUD–II was August 8, 1990. Later, during a Commission workshop on July 5, 1983, the Town reaffirmed the 1990 completion date and assured the joint venture that the building permits could lapse temporarily and be reissued.[4]

At its meeting on January 31, 1984, the Commission directed the town attorney to submit a draft of an ordinance explicitly amending Ordinance 282 to reflect the 1990 completion date, which he did in February. During a meeting on March 27, however, the Commission debated the correct completion date of the RPUD. In response to queries from the Commission, the town attorney stated:

> I assume, that the *letter that they received from the town is in full force and effect or would be relying on that.* If we are now reviewing the situation, I think a letter to that effect from the town ought to be sent saying, you know, this whole topic is being renewed ... but, I do think that the property owners have got to be notified that the town is reviewing the whole situation. [Emphasis added.]

Later, when the Commission appeared to reverse itself as to the correct completion date of the RPUD:

> Well, certainly if ... the town's position has changed as to the expiration date of the RPUD's and an ordinance is necessary ... I think we ought to get cracking on it. I would anticipate we're going to get lawsuits out of both people anyhow on this thing. Having led them down the primrose path for awhile, they're going to be trying to get some equity out of this thing and if we try to tell them they've got a

---

3. The Hoffmans withdrew from the joint venture upon conveying their interests. Broadview Federal Savings Bank (Broadview) loaned the joint venture $4.6 million and acquired the stock of Sentinel. Eventually, on August 30, 1985, Broadview also acquired the Zaremba interests in Hidden Harbor through a loan workout.

4. At the July 5, 1983, meeting, the joint venture filed a written request for a temporary suspen-

sion which confirmed the mutual understanding of the 1990 completion date. During the meeting, a discussion ensued concerning whether the Town should reaffirm that 1990 completion date with a "clean-up" ordinance "for the record." However, representatives of both the town and the joint venture expressed their mutual understanding that the RPUD expired in 1990.

year and a half to complete, they're going to be jumping all over the place.

Because of this conflict, the Commission voted unanimously to refer the question to the Planning Board for a "determination and recommendation," during its May 2, 1984 meeting.[5]

Thereafter, the Planning Board and the Commission held a series of meetings on the RPUD without notifying the joint venture. During these meetings, the town attorney advised the Town of potential legal consequences associated with changing the completion date and suggested that doing so ran afoul of basic principles of equity and fair play. Specifically he warned:

[I]f this goes to court, they're going to argue equitable estoppel and I wouldn't blame them. There were reasons ... [that] people at the time they did them thought they had good reasons for it (sic). People on the boards at the time they did, thought they had good reasons. Okay ... you're time frame is removed. You are a different set of people. You don't necessarily think what they did was right but you ought to go back and see why they did it at the time they did it. And, at the time that action was taken in 1980, they had presented certain evidence which indicated they had, or at least evidence that convinced the commission at the time they had been delayed in getting their permits. And, that's my recollection of how that came about.

Concurring in this assessment, Town Manager Elaine Roberts reminded the Board that the 1990 completion date had been promulgated in accord with the "philosophy" of the Commission when it approved the RPUD in 1980.

Disregarding such concerns, on December 12, 1984, the Planning Board determined that the completion date of the RPUD was July 1, 1985. The Board passed a resolution to this effect, which it sent to the Commission. At the direction of the Commission the town attorney notified the joint venture of the change in the completion date, in a letter dated January 30, 1985.

[T]he question of the RPUD zoning time frame is in controversy at the present time. I am enclosing a copy of the Town of Highland Beach Planning Board memorandum of December 19, 1984, which discusses this issue and gives the opinion memorandum which states as follows: 'The planning board finds no evidence that the build-out date has been extended beyond July, 1985.'

The town attorney attached a copy of the Board's resolution to the letter which further provided:

Ordinance No. 282, adopted July 1, 1975, specified that 'in any event building permits shall be applied for all buildings included within the RPUD approval and all such buildings shall be completed within ten (10) years of the effective date of this ordinance.' This gives rise to a question as to whether any ordinance will be in effect in the property after July 1, 1985.

Finally, the resolution stated: "It is the conclusion of the board that the previous zoning has, or is, expiring and that any permits in the future should be issued only under the existing zoning code."

Upon receiving the Town's letter, the joint venture appeared before the Planning Board and Town Commission repeatedly, arguing against the new interpretation of ordinance and its accompanying expiration date. The Town rebuffed all such attempts, and in one instance, during a Town Commission meeting, the town attorney informed representatives of the joint venture that based on the Town Commission's reinterpretation of the ordinance, the RPUD expired on July 1, 1985, and this was the Town's final decision. The Town further informed the joint venture that the RPUD project was "dead," that the Town was "tired of attorneys saying they have an extension of an RPUD," and "[t]he town commission voted five to zero that the RPUD expired July, 1985." The joint venture failed to complete the construction by July, 1985. In 1987, the Town changed the land use designation of the property, rezoning it residential, thereby permitting a densi-

---

5. The record refers to the Planning Board as both a commission and a board. For simplicity, we will refer to it exclusively as the Planning Board.

ty of only eight units per acre. On August 22, 1990, the Town Commission adopted ordinance 596 further downzoning to six units per acre, a density eighty percent lower than it had approved for the RPUD in 1980.

## PROCEDURAL HISTORY

The joint venture filed suit in state court, but the Town removed the action to the United States District Court for the Southern District of Florida. On July 25, 1988, the joint venture filed an amended complaint seeking: (1) injunctive relief reinstating the RPUD, under the theory of equitable estoppel, and (2) temporary damages for inverse condemnation under the Fifth Amendment and deprivation of civil rights under 42 U.S.C. § 1983. Alternatively, the joint venture requested temporary and permanent damages if unsuccessful in reinstating the RPUD.

The Town answered, denying the material allegations of the complaint and alleging that the issues were not ripe for determination because the joint venture failed to seek extensions or submit final development plans.

At trial, before the parties introduced any evidence, the district court ruled, as a matter of law, that the joint venture possessed a vested property right to the RPUD zoning until August 8, 1990, based on the mayor's October 30, 1980, letter.[6] After hearing the evidence, the jury, sitting as both fact-finder and advisory panel, returned verdicts in favor of the joint venture on all claims. The jury's special verdict provided damages as follows:

II. *Damages*

6. The fair market value of the property on July 1, 1985, with the RPUD zoning ~~providing for the completion by August 8, 1990~~, was $17,000,000.

7. The fair market value of the property on July 1, 1985, without the RPUD zoning ~~providing for the completion by July 1, 1985~~, was $2,000,000.

8. The loss of use of the subject property between July 1, 1985, and November 17, 1987, based on the market rate of return on the value of the plaintiffs' equity in the property is $15,000,000.

9. The loss of use of the subject property in adopting Ordinance 557 reducing the density from about 25 units per acre to 8 units per acre between November 17, 1987, and August 26, 1990, is $14,450,000.

10. The loss of use of the subject property in adopting Ordinance 596, further reducing the density to 6 units per acre, between August 26, 1990, and the present time is $# 9 14,450,000 plus # 10 1,700,000 = 16,150,000.

The district court granted partial remittitur of the jury award concluding that the evidence did not support the jury's response. The court ordered the joint venture to recover only $14,470,659 for the temporary taking, and retained jurisdiction to enter judgment for a permanent taking of $15,000,000 in lieu of the injunctive relief.

The Town moved for judgment notwithstanding the verdict or a new trial. Initially, the district court granted a new trial on damages, concluding the jury's damage award was excessive and that the jury had misunderstood the expert testimony. Later, the district court withdrew its order upon determining that the jury intended to award only $16,150,000 in temporary damages, and $15,000,000 in permanent damages, and not $31,150,000 in temporary damages. Following trial, the joint venture filed a motion for $1,792,093.25 in attorney's fees as a prevailing party. After a hearing, the district court awarded the joint venture attorney's fees. The Town appeals from both judgments.

## CONTENTIONS OF THE PARTIES

The Town contends that no legal basis exists for the joint venture's claims because the RPUD expired July 1, 1985. The Town contends that the district court committed error in ruling that the joint venture had a

---

6. Pursuant to this conclusion, the district court instructed the jury: "This court as a matter of law decided that these plaintiffs had a vested property right in the RPUD, which included a right to complete the project under the approved plans under general zoning ordinance 389 by August 8, 1990. You must accept that finding and proceed from there."

**1544**

vested right in RPUD zoning until 1990, and thus, it was entitled to a directed verdict. The Town also contends that because the joint venture did not request an extension and never submitted a new development plan, the constitutional issues involved are not ripe for review. Further, the Town contends that insufficient evidence exists in the record to support the damages and injunctive relief claims. The Town also contends that the district court improperly instructed the jury on major issues at trial. Finally, the Town contends that the joint venture is not entitled to attorney's fees and that even if it is the district court's award was excessive.

The joint venture contends that the facts support the district court's ruling on vested rights and that Florida law creates a protected property right in zoning and permits. The joint venture contends that the Town violated its procedural due process rights when it failed to provide notice and a fair hearing when it changed the expiration date of the RPUD. It also contends that the Town's actions amounted to a taking, violating its substantive due process rights. Further, the joint venture contends that the constitutional issues are ripe for review. The joint venture also contends that the jury instructions were in accord with the law, the unrebutted testimony supports the jury's damages award, and the evidence and law support the court's attorney's fees award.

## ISSUES

On this appeal we must decide the following issues: (1) whether the district court erred in determining that the joint venture maintained a vested right or a protected property interest in the RPUD zoning until 1990; (2) whether the joint venture's constitutional claims were ripe for review; (3) whether sufficient evidence exists to support the jury's finding on liability and damages; (4) whether sufficient evidence exists to support the district court's award of injunctive relief; (5) whether the district court properly instructed the jury as to the applicable law; and (6) whether attorney's fees were warranted, and if so, whether the district court's award was excessive.

## DISCUSSION

### I. VESTED RIGHTS

The Town contends that the court committed legal error because Ordinance 282, which mandated RPUD zoning to expire on July 1, 1985, was never amended to extend the completion date, as Florida law requires. Thus, the Town argues that the mayor's 1980 letter, extending the completion date to August 8, 1990, did not modify or amend the 1975 ordinance. This determination is a question of law that we review de novo. *MacKenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir.1991).

Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Marine One, Inc. v. Manatee County*, 877 F.2d 892, 894 (11th Cir.1989). For actions brought under the Fourteenth Amendment, the Supreme Court has defined a property interest as a "legitimate claim of entitlement." *Perry v. Sinderman*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In this sense, such "'property' interests ... are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699; *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Thus, reasonable expectations in a particular status may attain protected property status based upon a state law, regulation, policy, or a mutually explicit understanding a governmental body puts forth, and such an interest may be implied from words or conduct. *Perry*, 408 U.S. at 601, 602–03, 92 S.Ct. at 2700–2701; *see also Avco Community Developers, Inc. v. South Coast Regional Comm'n*, 17 Cal.3d 785, 132 Cal.

Rptr. 386, 553 P.2d 546, (1976) (creation of vested right where developer performs substantial work and incurs substantial liability on good faith reliance on building permit), *cert. denied,* 429 U.S. 1083, 97 S.Ct. 1089, 51 L.Ed.2d 529 (1977).

While we recognize "that there is no property right in possession of" a building permit, we have consistently held that property interests and vested rights may arise from zoning and permit approvals. *Marine One,* 877 F.2d at 894; *Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1351 (11th Cir.1990) (vested rights in plan approvals and building permits); *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir.1988) (vested rights in zoning), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989).

Applying these principles to the facts of this case, we conclude that the Town's interpretation of Ordinance 282, its representations to the joint venture, and the joint venture's acts of reliance created a reasonable expectation rising to the level of a property right. Thus, the district court correctly ruled that the joint venture

> had a vested right in the beneficial use of the subject property granted under zoning ordinance 282 classifying the property as a residential plan unit development, as modified and confirmed by zoning ordinance 389 granting the plaintiff the use of the property for construction of 620 units in accordance with the approved plans and fixing the time of completion as August 8, 1990.

The undisputed facts in the record support this conclusion.

On July 1, 1975 the Town enacted Ordinance 282, which provided that construction under the RPUD must be completed within ten years of the ordinance's effective date, or "within 60 days of the receipt of permits from each and every applicable governmental agency, *whichever is later.*" Highland Beach, Fla., Ordinance 282 ¶ 4.B (emphasis added). Any ambiguity in the ordinance's language was clarified at the Town Commission's meeting on October 28, 1980, when the commissioners voted unanimously to interpret Ordinance 282 as requiring completion of the RPUD by August 8, 1990, ten years from the date the Town issued its first construction permit.

After reaching this decision, the Commission directed the mayor to inform the joint venture, which he did in a letter providing that the Commission's interpretation of Ordinance 282 required the RPUD to "be completed by August 8, 1990." Moreover, the town's attorney expressly reaffirmed the 1990 completion date during a Town Commission workshop on July 5, 1983.

Although the Town concedes that it created the impression that the project's completion date was August 8, 1990, it contends that only an amendment to Ordinance 282 could extend the RPUD zoning beyond 1985. While that is a correct statement of Florida law, this principle is inapplicable in this case. The joint venture's reasonable expectation and reliance arose from the Town's interpretation of its own ordinance. Although the Town now argues that the ordinance is "clear as a bell," what is more clear is the Town's own confusion regarding the completion date of the RPUD. Contrary to taking its present position, the town believed that it did not have to draft a separate ordinance "cleaning up" the ambiguous time limits, because it was free to interpret its own ordinance. To this end, all the commissioners agreed that the proper interpretation of the ordinance was "that the clock starts running when [the Commission] issue[s] the building permit...." We consider such a contemporaneous interpretation highly persuasive. *See PW Ventures v. Nichols,* 533 So.2d 281, 283 (Fla.1988) (contemporary construction of statute by agency charged with its enforcement entitled to great weight).

■ The Town's municipal law endows the Commission with the authority to interpret its ordinances: "The duties of the town commission ... shall include hearing and *deciding questions of interpretation* and enforcement that may arise...." Highland Beach, Fla., Ordinance No. 338, § 7.3 (emphasis added). Because the Commission's interpretation of its own ordinances involved a municipal purpose, it constitutes a permissible exercise of authority under the broad home

rule powers embodied in the Florida Constitution. Fla. Const. art. VIII, § 2(b); Fla. Stat. § 166.021 (1987); *City of Ormond Beach v. County of Volusia*, 535 So.2d 302, 304 (Fla. 5th D.C.A.1988). Clearly, the Commission possessed authority to interpret its own ordinance, and the joint venture could reasonably rely on that interpretation.

Because the record supports the district court's conclusion that the Town's representations induced the joint venture to invest millions of dollars to develop the RPUD, we affirm its determination that the joint venture possessed a vested right in RPUD zoning through August 8, 1990.

## II. RIPENESS

The Town contends that the joint venture's constitutional claims are not ripe for review because the Planning Commission's decision not to extend the joint venture's RPUD beyond 1985 was not a final decision, and the joint venture could have sought review of that decision. For the reasons that follow, we reject this argument.

■ Whether a matter is ripe for judicial review depends on the nature of the claim asserted. *Eide v. Sarasota County*, 908 F.2d 716, 722–23 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 589 (6th Cir.1992). Thus, we must consider whether each claim is ready for review individually. The joint venture asserted three claims, inverse condemnation under the Fifth Amendment, and substantive and procedural due process claims under the Fourteenth Amendment. Although the Town lumped these claims together, in its initial brief to this court, we address the ripeness of each separately because different standards apply to different claims. *See Eide*, 908 F.2d 716, 722, 725 n. 16; *Seguin*, 968 F.2d at 589; *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir.1991).

### A. Fifth Amendment Claim

■ A Fifth Amendment claim that government regulation constitutes a taking is not ripe for adjudication unless the governmental body responsible for implementing the regulations has reached a "final decision regarding the application of the regulations to the property at issue." *Williamson v. County Regional Planning Comm'n v. Hamilton*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985); *A.A. Profiles*, 850 F.2d at 1486. The finality requirement is necessary to allow the court to evaluate the "economic impact" and the extent of the challenged regulation's interference with "reasonable investment-backed expectations." *Williamson County*, 473 U.S. at 191, 105 S.Ct. at 3118. In addition to the requirement of finality, a property owner must also establish that no state remedy adequately provides redress to the injury that the final decision causes. *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1516 (11th Cir.1987); *A.A. Profiles*, 850 F.2d at 1486.

The facts in the record support the district court's finding that the Town's decision not to extend the RPUD zoning until 1990 constitutes a final decision. *Eide*, 908 F.2d at 720–21. From the time the mayor informed the joint venture of the RPUD's completion date, in 1980, until the Town altered its interpretation of Ordinance 282 in 1984, the composition of the Town Commission changed accompanied by a change in philosophy regarding RPUD zoning. During its May 2, 1984, meeting, the Commission unanimously decided to reinterpret Ordinance 282, thereby changing its effective completion date to July, 1985. The Commission then referred the matter to the Planning Board for to issue a "determination and recommendation."

The Planning Board conducted a series of meetings during which it addressed this issue, and ultimately voted for the RPUD to expire automatically in July, 1985. Further, the Board concluded that "no evidence" existed which "extended [the build-out date] beyond July 1985," and recommended that the joint venture not receive any extensions. After this decision, the Commission directed the town attorney to inform the joint venture of the Town's decision. In notifying the joint venture of the change, the town attorney intended to convey that this was the Town's official final position.

The joint venture opposed the new interpretation and decision of the Town, lodging repeated protests. The joint venture appeared before the Planning Board and Commission protesting the Town's reversal and seeking reinstatement of the RPUD and the 1990 completion date. On April 30, 1985, representatives of the joint venture attended a Commission meeting in which the town's attorney informed them that Town's decision was final. The Town rejected each of the joint venture's appeals, ultimately telling its representatives that the RPUD project was "dead," that the Town was "tired of attorneys saying they have an extension of an RPUD," and that the "Town Commission voted 5 to 0 that the RPUD expired July, 1985."

■ Relying upon *Williamson* and its progeny, the Town argues that the joint venture still should have "appealed" the Town's decision, and asked either for a variance or a time extension. 473 U.S. 172, 105 S.Ct. 3108; *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1576 (11th Cir.1989). We disagree. While in most instances a property owner must apply for a variance for a less intrusive use, to determine what use the municipality will allow, such a requirement was not necessary here. The Town's reinterpretation of Ordinance 282 caused the joint venture's right to lapse into "no zoning." Then the Town adopted a comprehensive plan, ultimately downzoning to six units per acre. These facts demonstrate that the Town settled on a final use. *See A.A. Profiles*, 850 F.2d at 1487 (final use established by city's adoption of ordinance rezoning landowner's property).

The transparency of the Town's argument that the joint venture should have "appealed" to the Commission (the same body that previously denied their requests) for a time extension, is obvious because any such appeal, as the Town's own actions demonstrate, would have been futile. *See Eide*, 908 F.2d at 726 n. 17 (futility exception to ripeness excuses repeated submissions where further submissions would be futile) (citing *Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 377 (9th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988)). Because no uncertainty exists regarding the level of development the Town would permit, the reapplication requirement would not have served its intended purpose. *Greenbriar*, 881 F.2d at 1576. Because the Town established a final use for the property previously designated RPUD, the joint venture's Fifth Amendment taking claim was ripe for review.

## B. Due Process Claims

■ In addition to its Fifth Amendment takings claim, the joint venture also asserted due process claims. Because the joint venture won verdicts on these claims as well, independent grounds exist for affirming the district court, even if the Fifth Amendment claim were not ripe.

■ A property owner's rights are violated the moment a governmental body acts in an arbitrary manner and applies that arbitrary action to the owner's property. *Eide*, 908 F.2d at 724–26 (discussing ripeness requirements for due process claims). Because the application of an infirm governmental process itself represents an injury to the landowner, the joint venture's due process claims became ripe the moment the Town took action depriving it of its vested right. *Seguin*, 968 F.2d at 589.

Here, the joint venture's injury occurred when the Town reinterpreted Ordinance 282, halting the completion of the joint venture's project, and made it clear it would not compromise its reinterpretation that denied the joint venture it the benefit of its vested rights. Because the Town terminated the RPUD zoning in 1985, the joint venture's claims for violation of its due process rights became ripe at that time.

## III. TOWN'S LIABILITY

■ Next, the Town contends that the jury's liability findings, which the district court adopted, are contrary to the manifest weight of the evidence and clearly erroneous. We review such factual findings for clear error in a light most favorable to the jury's verdict. *See Newell v. Prudential Ins. Co. of America*, 904 F.2d 644, 649 (11th Cir.1990).

## A. Due Process Violations

To determine whether government action violates an individual's due process rights within the context of section 1983, the court must determine (1) whether the action deprives the individual of a constitutionally protected interest, and (2) whether that deprivation occurred without providing substantive or procedural due process. *Greenbriar*, 881 F.2d 1570, 1577 (11th Cir. 1989); *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1541 (11th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). As noted above, the district court correctly found that the joint venture attained a protected property interest or "vested right" in the RPUD through 1990. Thus, we must determine whether facts support the jury's findings that the joint venture was denied substantive of procedural due process.

### 1. Right to Notice and Fair Hearing

Procedural due process requires adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In this case, the evidence shows that the Town: (1) failed to provide the joint venture with notice of its meetings which resulted in the reinterpretation of Ordinance 282; and (2) failed to notify the joint venture of the Planning Board's December, 1984, meeting, in which the Board voted to declare the RPUD at an end in July, 1985.

The Town attempts to circumvent what would appear to be a glaring due process violation in three ways. First, the Town argues that the 1985 completion date was set in 1975, and the joint venture had ten years advance notice. This argument lacks merit, because the Town altered its official policy concerning the RPUD's expiration date. Thus, because this change altered the joint venture's vested property rights, due process

required that the Town give the joint venture notice and a fair hearing. It did neither.

Second, the Town argues that because the Planning Board is merely an advisory body and "could not deprive [the joint venture] of anything," due process did not require notice of the meetings. This contention, while somewhat more compelling, meets the same fate. The district court specifically found that the Commission delegated the decision to accelerate the completion date to July 1, 1985, and the facts in the record support this finding.

During its May 2, 1984 meeting, the Commission voted unanimously to "formally refer the matter ... to the Planning [Board] for determination and recommendation." Then, after the Planning Commission reached its decision in December, 1984, the Commission directed the town attorney to advise the joint venture of the Planning Board's decision. On January 30, 1985, the town attorney wrote the joint venture a letter informing it of the Town's new, "official" position. Then, when the joint venture protested the change, the Town informed it that it "was tired" of the joint venture's attempts to extend the RPUD and that the Commission voted unanimously that the RPUD expired in 1985. These circumstances demonstrate that the Board's decision was not "merely advisory." [7]

Finally, the Town argues that it provided notice when it wrote the joint venture concerning the Town's review of the completion date, and then again when the Planning Board reported to the Commission. These actions, however, did nothing to protect the joint venture's due process rights. The town attorney's one paragraph letter to the joint venture merely informed it that the issue was "under review" and provided no information concerning the appropriate hearing schedule. Thus, the Town did not adequately notify the joint venture or allow for a meaningful hearing, and the jury's finding is not clearly erroneous.

---

7. The Town's reliance upon *Macene v. MJW, Inc.*, 951 F.2d 700 (6th Cir.1991) is misplaced because in that case the aggrieved party received notice

and opportunities to assert its position before the governmental body.

### 2. Substantive Due Process

Deprivation of a property interest rises to the level of a substantive due process violation if done for improper motives and achieved through means that are arbitrary and capricious, and lacking any rational basis. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989); *Greenbriar*, 881 F.2d at 1577; *Executive 100*, 922 F.2d at 1541. The question before us then is whether the Town acted in an arbitrary and capricious manner when it reinterpreted Ordinance 282. We conclude that it did.

The record demonstrates that the Commission knew that the joint venture was relying upon the mutual understanding with the Town, and committed substantial funds to develop the RPUD. In fact, on several occasions, the Town's own attorney warned the Commission about the repercussions of its unilateral actions. Specifically, the attorney and other public officials informed the Town that the joint venture was relying upon the Mayor's letter declaring the completion date as 1990. The town attorney further cautioned that changing the existing interpretation of Ordinance 282 would create an "estoppel." Likewise, the Town ignored the mayor's warning that the Town led the joint venture down the "primrose path" to rely upon the 1990 completion date. Additionally, after the RPUD lapsed, causing the property designation to revert to "no zoning," the Town took an extended period of time to rezone the site, denying the joint venture use of the property.[8] Finally, the Town refused to accept applications for the reissuance of previous permits, even though it previously had promised such permits were forthcoming. This evidence supports the jury's finding that the Town acted in an arbitrary and capricious manner without respect to the joint venture's rights.

### B. Fifth Amendment Takings

The jury also returned verdicts in favor of the joint venture on its takings claim, finding that the Planning Board's change in the completion date constituted a taking because it deprived the joint venture of all the beneficial use of its property. The Town contends that this finding lacks factual support.

The application of a general zoning law to a specified piece of property effects a taking if it denies the owner of the economically viable use of the property. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). Whether state action denies a landowner all or substantially all economically viable use of his property turns on the economic impact on the claimant and the extent to which the regulation interferes with investment-backed expectations. *Bowen v. Gilliard*, 483 U.S. 587, 606, 107 S.Ct. 3008, 3020, 97 L.Ed.2d 485 (1986). The ad hoc, case-by-case inquiry which accompanies this determination requires no more than an application of the law to the facts. *Bowen*, 483 U.S. at 606, 107 S.Ct. at 3020. Contrary to the Town's contentions, sufficient evidence exists in this case to support the finding that the Town's action denied the joint venture the economically viable use of its property. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 138, 98 S.Ct. 2646, 2666, 57 L.Ed.2d 631 (1978); *Lucas v. South Carolina Coastal Council*, —— U.S. ——, ——, 112 S.Ct. 2886, 2893–94, 120 L.Ed.2d 798, 813 (1992).

After the Town changed the RPUD action date, insufficient time remained for the joint venture to complete the project. Although the joint venture appeared before the Planning Board and Town Commission repeatedly to seek reinstatement of the 1990 completion date, the Town held to its position. After the RPUD zoning lapsed, causing the property to lapse into "no zoning," the property became completely unusable. Then, in 1987 and again in 1990, the Town downzoned the property severely limiting its economic value to the joint venture.

The Town's actions caused a detrimental economic impact to the joint venture's investment. During the period of "no-zoning," from July, 1985 until 1987, the value of the property dropped precipitously, from $17,000,000 to $2,000,000. Although the proper-

---

**8.** After the RPUD expired on July 1, 1985, the Town relegated the property to "no zoning," which prevented the joint venture from making any use of the property.

ty's value climbed to a maximum value of $6,000,000 after rezoning, its value fell far below the joint venture's initial investment of $8,000,000, completely destroying the joint venture's investment-backed expectations. These facts support the conclusion that the Town's actions effected a taking of the joint venture's property during the "no-zoning" period and thereafter.[9]

The jury's verdicts on the takings issues were purely advisory. *See United States v. Reynolds,* 397 U.S. 14, 19, 90 S.Ct. 803, 806–07, 25 L.Ed.2d 12 (1970); *Dep't of Agric. and Consumer Serv's v. Polk,* 568 So.2d 35, 40 (Fla.1990). Thus, because the court determines all issues, legal and factual, in an inverse condemnation suit, save the question of just compensation, the Town's argument that the jury's finding was erroneous is significantly weakened.

## IV. INJUNCTIVE RELIEF

After concluding that the Town was equitably estopped from denying the joint venture's vested rights to the RPUD, the court ordered reinstatement of the RPUD for a period of five years, one month and seven days (the remaining time period of the joint venture's vested rights). The court also ordered the Town to permit all reasonable modifications to the approved plans. The Town contends that these findings lacked support in the record. We disagree.

Under Florida law, a municipality is equitably estopped from exercising its zoning power when a property owner (1) relying in good faith, (2) upon an act or omission of the government (3) has made a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights the owner acquired. *City of Lauderdale Lakes v. Corn,* 427 So.2d 239, 243 (Fla. 4th D.C.A. 1983). This doctrine is grounded on fairness and common sense.

[E]stoppel amounts to nothing more than ... fair play. One party will not be per-

mitted to invite another onto a welcome mat and then be permitted to snatch that mat away to the detriment of the party induced ... to stand thereon. A citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds....

*Florida Cos. v. Orange County,* 411 So.2d 1008, 1011 (Fla. 5th D.C.A. 1982) (quoting *Town of Key Largo v. Imperial Homes Corp.,* 309 So.2d 571, 573 (Fla. 2d D.C.A. 1975)). The record reveals that the district court was justified in its application of the doctrine of equitable estoppel.

In this case, the final judgment demonstrates that the joint venture relied in good faith upon the Town's representations, contained in a letter from the Town Mayor, that the RPUD expired in 1990. The Mayor wrote the letter under the authority of an at the express direction of the Town Commission, the highest policy making body in the Town. Given the terms of the ordinance at issue, the Town's interpretation of when the RPUD would expire, as outlined in the Mayor's letter, was not absurd. This understanding was reaffirmed several times from 1980 to 1984, and induced the joint venture to invest over $8,000,000 to begin the project. The district court's factual findings underlying its application of the equitable estoppel doctrine are supported by competent and weighty evidence contained in the record, and "the conclusions of law follow logically from the findings." *Corn,* 427 So.2d at 243. We therefore will not disturb them on appeal.

We also affirm the district court's ruling directing the Town to grant all reasonable plan modifications, consistent with purposes of the RPUD. Granting injunctive relief, like other equitable remedies, falls within the broad discretion of the district court and we will not disturb the court's exercise of discretion absent a clear showing that the court abused its discretion. *See*

---

9. Although the Town does not challenge the just compensation, or damages, the jury arrived at for the Town's taking, we point out that such findings may be overturned only upon a finding of clear error. Because credible evidence supports the jury's findings in this regard, no clear error exists.

generally *Frio Ice, S.A. v. Sunfruit, Inc.* 918 F.2d 154, 159 (11th Cir.1990); *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1561 (11th Cir.1989), *aff'd* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). We find no abuse of discretion here. To have its intended effect, the injunction provides the joint venture with the opportunity to develop the property as intended under the original RPUD. The court's equitable order achieves this. Because it must only grant reasonable modifications of the plans, the injunction does not rob Town of its legislative prerogatives as it suggests.

## V. DAMAGES

As noted, significant confusion arose from the jury's damages award. Ultimately, however, after several shifts, the district court concluded the jury intended to award $16,150,000 in temporary damages and $15,000,000 in permanent damages and entered judgment accordingly. The Town challenges these findings on several grounds, and we address each argument.

 First, the Town argues that the answers to the special verdict show that the jury intended to award $31,500,000 in temporary damages for property the jury valued at $17,000,000, and that such an award was excessive. Because we conclude that the jury did not intend to award $31,150,000 in temporary damages, we reject this argument.

The confusion surrounding the jury's damage award arises from the special verdict form itself. The special verdict contained two questions asking the jury to value the land with and without the RPUD to arrive at an appropriate permanent damages figure (questions # 6 and # 7). However, despite the court's instruction to the jury that it should award permanent damages, the special verdict form provided no opportunity for the jury to do so, nor did it mention permanent damages. Thus, this omission left the court to make the proper computation for permanent damages, yielding a total of $15,000,000.

For temporary damages, the special verdict contained three questions requiring the jury to value the temporary damages during three different intervals (questions # 8, 9, and 10). This reflected the district court's conclusion "that since the diminution in value varied during three time periods, it was [necessary] to pose the questions in a way that reflected these differences." The verdict form, however, contained no provision for computing the total amount of temporary damages nor did it specifically refer to temporary damages. Again, the omission required the court to make the appropriate computation.

Compounding this problem, the jury never received instructions on valuing the property during the three different time intervals. In fact, and the court's instructions specifically called for a single figure for temporary damages. Thus, in answering question number ten, the jury wrote in the total figure: "# 9 $14,450,000 plus # 10 $1,700,000 = $16,150,000," and explained that this was the total temporary damage award:

> The foreperson: We have one question on this one, your Honor. We weren't sure if you just wanted the difference between number nine and number ten or if you wanted the *total* figure. We have the difference as $1,700,000 even; or *$16,150,000* depending on whether you wanted it added to number nine. [Emphasis added.]

After its initial confusion, the district court upheld the jury's original damages award, stating:

> We find that the jury intended to award damages for loss of use for the period July 1, 1985, to August 26, 1990, the sum of $14,450,000 and the sum of $1,700,000 for the period August 26, 1990, to March 4, 1992—the total sum of $16,150,000 for the period from July 1[,] 1985, to March 4, 1992. We are convinced that the jury did report the loss of use for the period as intended. [Footnote omitted.]

In reconciling the verdict, the district court noted that the verdict form was "an invitation for the jury to arrive at the sum of $15,000,000 [for question # 8], believing that the jury was determining the amount of *permanent damage.*" We agree.

The district court's reconciliation of the jury's verdict to the evidence introduced at

trial was proper, and effectuated the jury's intent in awarding damages. The joint venture's expert witness, James Hutchinson, provided the only evidence on damages. He testified that the value of the temporary damages, for the period from January 30, 1985, to March 2, 1992, totalled $16,090,131.[10] He also provided the only evidence concerning the value of the permanent damages.

To reconcile the jury's verdict, the district court considered all of the circumstances surrounding the trial, including the manner in which the jury completed the form, the foreperson's report on the verdict, the confusing jury instructions and most importantly, the unrebutted testimony of the joint venture's expert witness. The evidence supports the district court's conclusion.

A court is obligated to reconcile apparent inconsistencies in a jury's answers to special interrogatories. *Royal Cup, Inc. v. Jenkins Coffee Serv., Inc.*, 898 F.2d 1514, 1519 (11th Cir.1990). While a court's reconciliation must still be reasonable, a court maintains wide latitude in handling special verdicts, and "where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved in that way." *Toner v. Lederle Labs*, 828 F.2d 510, 513 (9th Cir.1987), *cert. denied*, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988); *Atlantic & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). This was not an insurmountable inconsistency requiring a new trial, as the Town suggests, because the jury's intent was plain. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).

Any confusion over the jury's damages award arose from the awkward and misleading special verdict forms, rather than from any deficiency of the evidence or the jury's misapprehension of that evidence, thus, the district court did not abuse its discretion.

■ Next, the Town contends that even if the damage award was not excessive, it fails to comport with the valuation require-

ments mandated in *Wheeler v. City of Pleasant Grove*, 833 F.2d 267 (11th Cir.1987) (*Wheeler III* ), and *Wheeler v. City of Pleasant Grove*, 896 F.2d 1347 (11th Cir.1990) (*Wheeler IV*), and lacks an evidentiary basis.

In *Wheeler III*, this court adopted a formula for calculating damages for temporary regulatory takings which attempts to ascertain the "market value," of the taking.

> The landowner's compensable interest, therefore, is the return on the portion of fair market value that is lost as a result of the regulatory restriction. Accordingly, the landowner should be awarded the market rate of return computed over the period of the temporary taking on the difference between the property's fair value without the regulatory restriction and its value with the restriction.

*Wheeler III*, 833 F.2d at 271. Then, in *Wheeler IV*, this court applied this formula, factoring in the proposed use of the rental property and the plaintiff's equity in the project to arrive at a figure that represented the difference in the equity in the project as if fully built and the equity in the undeveloped land. *Wheeler IV*, 896 F.2d at 1351–52.

In valuing the loss incurred due to the Town's taking, the joint venture's expert witness calculated the "market value" of the loss, in this case the reasonable rate of return on the diminution in value of the property upon resale, not the income from an "as-built" rental. Because the development at issue in this case involved a condominium project designed for phased build-out and immediate resale, and not a project maintained for rental income, the developer's equity varies widely as the build out progresses, and the unit sales close. Thus, while the district court applied the fact intensive inquiry from *Wheeler III*, the expert testified that the "as built" equity consideration in *Wheeler IV* did not apply. That testimony was unrebutted.

■ Finally, the Town argues that the awards for temporary and permanent damages lack factual support in the record. As we understand this argument, the Town as-

---

**10.** The district court reduced this sum to reflect the loss of use from July 1, 1985, the first date

the joint venture was denied the full benefit of its property.

serts that the court had no factual basis for reducing the jury's award to correspond to the proper time periods involved (July 1, 1985, to March 2, 1992, rather than January 30, 1985, to March 2, 1992), and thus the total award cannot stand. Because the joint venture's expert, James Hutchinson, testified as to a longer time interval, the court acted entirely within in its discretion in reducing the award on a pro rata basis to correspond to the actual period of the taking. We find no error.

## VI. JURY INSTRUCTIONS

Next, the Town challenges the district court's instructions on several of the critical issues arising at trial. We review such claims to determine whether the instruction, as a whole, fairly and adequately address the issue and correctly state the law. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir.1991). We will not reverse an imperfect jury instruction unless it caused prejudicial error. *See Jamesbury Corp. v. Litton Indus. Products, Inc.*, 756 F.2d 1556, 1560 (Fed.Cir. 1985). Because four of the challenged instructions concerned questions of law for the court—vested rights, equitable estoppel, due process, takings—the jury acted only in an advisory capacity on those issues, rendering any error harmless.

The Town also argues that the instruction on municipal liability was in error because it did not require the jury to find that the person purportedly acting for the city possessed "final policy making authority," before it imposed liability. Because substantial evidence supports the finding of delegation of authority to the mayor to write the 1980 letter and to the Planning Board to make a determination of the completion date of the RPUD for its factual findings, no prejudice exists.

Finally, the Town argues that the instructions on damages were misleading because they did not limit recovery to market rate of return on the property owner's equity interest. This argument lacks merit as the instruction was based on *Wheeler III*, and *Wheeler IV*, which the Town concedes is the proper damages formula.[11]

## VII. ATTORNEY'S FEES

After the jury returned its verdicts, the joint venture moved for attorney's fees and costs pursuant to 42 U.S.C. § 1988, and Fla. Stat. §§ 73.091, *et seq.* The joint venture's motion requested attorneys fees for three different law firms, totalling $1,792,093.25 for 12,242.75 hours of work. In its memorandum opposing the award of attorney's fees, the Town conceded the joint venture's entitlement to fees as the prevailing party, but challenged the time claimed and the hourly rates billed. The district court conducted a three-day hearing on the issue of fees, taking testimony from three attorneys and one fee expert for the joint venture and an fee expert for the Town. Following the fee hearing, the district court entered judgment for joint venture for the total amount sought.

The Town appeals the award, raising two issues. First, the Town contends that section 1988 does not warrant an award because the joint venture is not a "prevailing party, other than the United States," as the statute requires. The Town argues that Resolution Trust Corporation is an instrumentality of the United States because it acted as a receiver of an insured depository institution to the same extent as the Federal Deposit Insurance Corporation when it is acting as a conservator or receiver of an insure depository institution. 12 U.S.C. § 1441a(b)(1)(A) and (B).

We need not reach this issue because during the trial on attorney's fees, the Town expressly conceded that the joint venture was the prevailing party. In its memorandum in opposition to the joint venture's motion for attorney's fees the Town admitted that "the plaintiffs are the prevailing party

---

11. The Town makes one further, more general attack on the jury instructions, arguing that the issues submitted to the jury were unrelated to the issues raised in the joint venture's complaint, which challenged the constitutionality of Ordinances 282, 549 and 557. This argument lacks merit because, per stipulation of the parties, the issues were more narrowly tailored for trial by order of the court. The issues were raised in the pleadings and the trial court granted the joint venture's motion to amend the pleadings to conform to the evidence.

on both their inverse condemnation and civil rights claims.... Thus, the dispute here is not whether plaintiffs are entitled to an award of fees, but what the amount of such an award should be." Later, during the fees hearing, the Town reiterated this concession. Such concessions are binding upon the Town. *Wilson v. Bailey,* 934 F.2d 301, 305 (11th Cir.1991). *See also United States v. Lott,* 870 F.2d 778, 781 (1st Cir.1989); *Lowy v. Bay Terrace Co-op. Section VIII, Inc.,* 869 F.2d 173, 175 (2d Cir.1989); *United States v. Northern Colorado Water Conserv. Dist.,* 608 F.2d 422, 431 (10th Cir.1979). Because the Town failed to challenge the joint venture's status as a prevailing party in the trial court, it waived review. *First Alabama Bank, N.A. v. First State Ins. Co., Inc.,* 899 F.2d 1045, 1060 n. 8 (11th Cir.1990); *In re Daikin Miami Overseas, Inc.,* 868 F.2d 1201, 1206 (11th Cir.1989); *Sanders v. United States,* 740 F.2d 886, 888 (11th Cir.1984).

Acknowledging its waiver of this issue, and citing this court's decision in *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir.1984), the Town argues that we should relieve it from its waiver. We reject the Town's invitation to do so, for even if we considered its argument under section 1988, the joint venture is still entitled to fees under Florida law, so there is no miscarriage of justice. *Sanders,* 740 F.2d at 888. The Town conceded this during the fee hearing and did not brief the issue on appeal.

■ The Town also argues that the court's award is "grossly excessive and inadequately described." The argument lacks merit.

■ When granting an award of attorney's fees, the district court must multiply the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court may then adjust this "lodestar" to reflect the results obtained. *Hensley,* 461 U.S. at 435–37, 103 S.Ct. at 1940–41. We review the district court's award of attorney's fees for an abuse of discretion. *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir. 1987). Because

the Town concedes that rates applied by the court were reasonable, we only consider whether the hours expended were reasonable.

The joint venture sought attorney's fees for over 12,000 attorney hours. In support of this figure the joint venture submitted three volumes of materials containing the affidavits of the three primary attorneys who worked on the case, copies of billings from all three law firms involved and the tabulations of the fees. During the hearing, the joint venture introduced the testimony of three lawyers who testified as to the accuracy of the time sheets and the necessity of the hours worked. The joint venture also called a fee expert who testified that the hours logged on behalf of the joint venture were reasonable and necessary. Based on the evidence before it the district court determined that the joint venture's request was reasonable and awarded fees. We agree with that determination.

The record on appeal, comprising over ten boxes of materials and exhibits, and briefs comprising over one-hundred fifty pages of argument reveals a case of exceptional complexity and intricacy. The roots of the case reach back over two decades and actual litigation involved has now eclipsed five years. The issues presented at trial were hotly disputed and extensively litigated. Even on this appeal the litigants have fought grudgingly over each and every issue, some of which are raised for the first time here. The large number of hours spent in trial preparation for this case arose, in a large part, from the inherent scheduling difficulties in the case and the highly technical nature of the case itself. The district court postponed the trial in this case no less than eight times, forcing the attorneys for both sides to prepare for trial repeatedly.

The district court's memorandum decision on the award of attorney's fees, provides a well-reasoned and comprehensive discussion of the facts supporting the court's award of fees. The record reveals that the attorney's fees were both reasonable and necessary in order to properly litigate this case. Because the record supports the district court's deter-

mination, the court acted well within its discretion when it awarded fees.

### CONCLUSION

We hold that the Town's interpretation of its own ordinance, Ordinance 282, created vested rights in RPUD zoning through 1990, obviating the need for an amendment to the ordinance. Thus, we conclude that the joint venture reasonably relied upon the Town's representations when investing in the development project, and suffered damages when the Town voted that the RPUD zoning expired in 1985. We decide all issues in favor of the joint venture.

AFFIRMED.